Terry BLANKENSHIP, Appellant,

v.

**The STATE of Texas, Appellee.**

**No. 796–83.**

Court of Criminal Appeals of Texas, En Banc.

July 18, 1984.

**580**

Adolfo Quijano, Jr. (Court-appointed), Robin Norris, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. and Allan Massis, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty., and Cathleen Riedel, Asst. State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

"He who represents himself has a fool for a client."

While there may be resounding truth to the old proverb, today we must determine if the trial judge's jealous protection of the appellant's Sixth Amendment right to counsel demonstrated by his refusal to allow pro se representation was in error. We find that it was and reverse appellant's conviction.

Appellant was convicted by a jury of aggravated robbery and his punishment was assessed at 35 years confinement. The El Paso Court of Appeals affirmed the conviction in *Blankenship v. State*, 656 S.W.2d 184 (Tex.App.—El Paso 1983). We granted appellant's petition for discretionary review to consider the Court of Appeals' holding that appellant's request for pro se representation was conditional on his being provided with the appropriate law books and thus there was no error in the trial judge's refusal to permit appellant to represent himself at trial.

On December 11, 1980, appellant was indicted for aggravated robbery. On February 6, 1981, a copy of the State's Motion for Arraignment was sent to Adolfo Quijano, the appellant's attorney.[1] At the March 2, 1981, arraignment, appellant appeared with his attorney and pled not guilty. On March 30, 1981, the day of trial, the trial judge engaged in the following colloquy with the appellant:

"THE COURT: Mr. Terry Blankenship, Mr. Quijano has informed the Court you want to represent yourself.

"DEFENDANT BLANKENSHIP: Yes, sir. I would like to pro se my own case.

"THE COURT: Of course, the law says you have a constitutional right—

"DEFENDANT BLANKENSHIP: That is right.

"THE COURT: —and providing that you have the ability.

"DEFENDANT BLANKENSHIP: I do have the ability, sir.

"THE COURT: May I ask your educational background, sir?

"DEFENDANT BLANKENSHIP: Okay. I was born in South Carolina, and I have about six years in college.

"THE COURT: I am sorry?

"DEFENDANT BLANKENSHIP: College.

"THE COURT: What college?

"DEFENDANT BLANKENSHIP: Columbia.

"THE COURT: Which college?

"DEFENDANT BLANKENSHIP: Columbia, a university in South Carolina. It is just a small town college. I don't remember the name of it.

"THE COURT: You don't remember the name of it?

"DEFENDANT BLANKENSHIP: No, it has been years since I have been there.

"THE COURT: How many years did you spend in that college?

---

1. We assume that Mr. Quijano was appointed to represent the appellant prior to the date of said

Motion although the record is silent.

"DEFENDANT BLANKENSHIP: About six years.

"THE COURT: Did you graduate?

"DEFENDANT BLANKENSHIP: No, sir.

"THE COURT: What did you major in?

"DEFENDANT BLANKENSHIP: History.

"THE COURT: How many hours did you end up with?

"DEFENDANT BLANKENSHIP: I really couldn't say right now.

"THE COURT: Did you take any courses in law down there?

"DEFENDANT BLANKENSHIP: No, I studied that on my own.

"THE COURT: How did you study the law?

"DEFENDANT BLANKENSHIP: I went to the library and got books.

"THE COURT: When did you do that?

"DEFENDANT BLANKENSHIP: While I was there.

"THE COURT: While in college?

"DEFENDANT BLANKENSHIP: No, not while in college, in later years.

"THE COURT: What books did you study?

"DEFENDANT BLANKENSHIP: United States Constitutional Law.

"THE COURT: You mean the Constitution itself?

"DEFENDANT BLANKENSHIP: Yes, and the Amendments.

"THE COURT: Did you read any other books?

"DEFENDANT BLANKENSHIP: I studied the Constitution and Constitutional Amendments. That is about it.

"THE COURT: And no other, you didn't study any other law?

"DEFENDANT BLANKENSHIP: No.

"THE COURT: What kind of work have you done since college?

"DEFENDANT BLANKENSHIP: Landscaping, mostly.

"THE COURT: Nothing that involved a great deal of writing, reading or speaking?

"DEFENDANT BLANKENSHIP: No.

"THE COURT: You understand if the Court allows you to represent yourself that I can't help you on anything, you are on your own.

"DEFENDANT BLANKENSHIP: I am not expecting that at all.

"THE COURT: Do you know what the voir dire part of a trial is?

"DEFENDANT BLANKENSHIP: What is that?

"THE COURT: Do you know what the purpose of voir dire is?

"DEFENDANT BLANKENSHIP: I would have to see the books.

"THE COURT: All right. Do you understand that by representing yourself that you are going to be bound by the law?

"DEFENDANT BLANKENSHIP: Oh, yes.

"THE COURT: The Court is going to assume you know the law and if you don't know the law, it is at your own risk and peril.

"DEFENDANT BLANKENSHIP: I understand that.

"THE COURT: Okay. Do you understand that it is up to you to subpoena any witnesses that you have. Do you know how to do that?

"DEFENDANT BLANKENSHIP: Yes, but I also have to be provided with the books.

"THE COURT: You are making a request for law books?

"DEFENDANT BLANKENSHIP: That is part of my Constitutional rights.

"THE COURT: What books do you want, sir?

"DEFENDANT BLANKENSHIP: Constitutional law. I want books parallel to my own case, parallel to that, like the State versus So and So, or So and So versus the State of Texas, or whatever.

"THE COURT: Do you know what the best evidence rules is, sir? I am just asking if you know some rules.

"DEFENDANT BLANKENSHIP: It has been a while since I studied. You will have to excuse me on that.

"THE COURT: Do you know what the definition of robbery and aggravated robbery?

"DEFENDANT BLANKENSHIP: Like I said, it has been a while since I studied this stuff.

"THE COURT: Do you know what grounds for cause that you can use on challenging a prospective juror?

"DEFENDANT BLANKENSHIP: Prejudice is one.

"THE COURT: What type of prejudice?

"DEFENDANT BLANKENSHIP: In my case, since I do have long hair and I do look like a so-called hippie, a lot of people think about that. That would be proper.

"THE COURT: Do you know how many peremptory challenges you are entitled to in a trial?

"DEFENDANT BLANKENSHIP: Three, I believe.

"THE COURT: Do you know basically what a hearsay objection is?

"DEFENDANT BLANKENSHIP: That is hearsay evidence that hasn't been proved. Well, in other words, it is like some one sees you do something but they are not quite sure it was you or not. That is hearsay.

"THE COURT: Do you know what the Fourth Amendment is about?

"DEFENDANT BLANKENSHIP: Like I say, it has been a while since I studied, many years.

"THE COURT: All right. You don't know what the Fourth, Fifth or Sixth Amendments are?

"DEFENDANT BLANKENSHIP: I know the freedom of speech, freedom of press, and so forth and so on.

"THE COURT: Do you know what elements the State must prove against you?

"DEFENDANT BLANKENSHIP: They have to prove I am guilty or I am not.

"THE COURT: Sir?

"DEFENDANT BLANKENSHIP: They have to prove beyond a reasonable doubt, beyond a shadow of a doubt that I am guilty of what they say, or I am innocent.

"THE COURT: You don't know what elements they have to prove?

"DEFENDANT BLANKENSHIP: They have to prove that I was there at the time, what is stated in the statements against me is true and they have to prove it.

"THE COURT: All right, Mr. Blankenship—

"DEFENDANT BLANKENSHIP: Yes, sir.

"THE COURT: *I don't think you are qualified to represent yourself in Court.*

"DEFENDANT BLANKENSHIP: Like I said before, Your Honor, and as you said yourself, it is my Constitutional right and therefore, I am going to take that Constitutional right.

"THE COURT: I overrule you this time. You will be represented by Mr. Quijano in this case. That is all." [2]

■ The Sixth and Fourteenth Amendments to the United States Constitution guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can validly be convicted and punished by imprisonment. The U.S. Supreme Court in *Faretta v. California*, 422 U.S. 806, 819, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975) found in the Sixth Amendment an independent constitutional right of an accused to conduct his own defense and held that the right to self-representation does not arise from one's power to waive assistance of counsel. The Court held that

**2.** Immediately after the court overruled appellant's motion to proceed pro se, the court overruled Attorney Quijano's motion to withdraw as appellant's counsel. Quijano told the court he was unable to effectively represent the appellant

inasmuch as the appellant informed him he no longer desired Quijano's services and he would be uncooperative in the defense of his case.

All emphasis throughout this opinion is supplied by the writer unless otherwise indicated.

it is for the accused personally to decide whether assistance of counsel in his particular case is to his advantage, and *"his choice must be honored* out of 'that respect for the individual which is the lifeblood of the law,' " *Id.* at 834, 95 S.Ct. at 2541, citing *Illinois v. Allen,* 397 U.S. 337, 350–351, 90 S.Ct. 1057, 1064–1065, 25 L.Ed.2d 353 (1970) (Brennan, J., concurring). (Emphasis added).

 The nature of criminal litigation is complex and defendants who insist that they neither need nor want assistance in rebutting the prosecution's claim have made an unsagacious choice. It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. *But* the right to defend is personal. It is the defendant, *not* his lawyer or the State, who will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. While we may be skeptical of his election knowing that he may conduct his defense ultimately to his own detriment, his choice must be honored. *Faretta,* supra 422 U.S. at 833, 95 S.Ct. at 2540. In order to competently and intelligently choose self-representation, the defendant should be made aware of the dangers and disadvantages of self-representation so that the record will establish that "he knows what he is doing and his choice is made with eyes open." *Faretta,* supra at 835, 95 S.Ct. at 2541, citing *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) and *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 241, 87 L.Ed. 269 (1942). While *Faretta* does not *mandate* an inquiry concerning appellant's age, education, background or previous mental health history in *every* instance where an accused expresses a desire to represent himself, *Martin v. State,* 630 S.W.2d 952, 954 (Tex. Cr.App.1982), the record must contain proper admonishments concerning pro se representation and any necessary inquiries of the defendant so that the trial court may make "an assessment of his knowing exercise of the right to defend himself." *Faretta,* supra, 422 U.S. at 836, 95 S.Ct. at 2541.

"In honoring such requests, [for self-representation] however, the courts are duty-bound to examine defendants assiduously as to their knowledge and intent, ever cautious to ensure that the election is not merely the hollow incantation of a legal formula, but a purposeful, informed decision to proceed pro se."

*United States v. Tompkins,* 623 F.2d 824, 825 (2d Cir.1980).

 This Court requires no formulaic questioning to establish a knowing and intelligent waiver nor will it author a script for courtroom recitation by trial judges faced with this dilemma. On the other hand, *Faretta* does not authorize trial judges across this state to sit idly by doling out enough legal rope for defendants to participate in impending courtroom suicide; rather, judges must take an active role in assessing the defendant's waiver of counsel.

"A judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right, does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments, thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which a plea is tendered." *Von Moltke v. Gillies,* 332 U.S. 708, 723, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948).

See also *Geeslin v. State,* 600 S.W.2d 309 (Tex.Cr.App.1980); *Goodman v. State,* 591

S.W.2d 498 (Tex.Cr.App.1979). In the end however, a defendant must be allowed to represent himself "if he truly wants to do so." *Faretta,* supra, 422 U.S. at 817, 95 S.Ct. at 2532.[3]

■ In the instant case, in its examination of *Blankenship,* the trial court elicited information such that the appellant had spent six years attending a small South Carolina college majoring in history, had previously studied constitutional law and was employed in the field of landscaping. The record also indicates that the appellant was informed that he would have to bear the consequences of his action and that he was aware of the impact his waiver would have. It was not until the court began questioning Blankenship about his familiarity with the formalities of the rules of evidence and procedure that things began to snag. The appellant told the judge he was unable to answer the court's specific procedural and evidentiary questions until he reviewed the appropriate law books to refresh his memory. The Supreme Court in *Faretta* specifically addressed this issue and stated, "Although a defendant *need not* himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation...." *Faretta,* supra at 835, 95 S.Ct. at 2541. (Emphasis added). See *Burton v. State,* 634 S.W.2d 692, 694 (Tex.Cr.App.1982). The record indicates that Blankenship was aware of the implications of his decision; to also require a lawyer's expertise as a prerequisite to asserting the right would deny it to all but a small portion of society. *Lyles v. Estelle,* 658 F.2d 1015 (5th Cir. 1981). While we may agree that the appellant flunked the trial court's impromptu evidentiary and procedural "pop quiz," the court's *ruling* that appellant was *unqualified* in that his lack of proficiency negated

a "knowing and intelligent" waiver, was an improper ground for denial of appellant's right to self-representation.

■ The Court of Appeals' interpretation of the colloquy is equally erroneous. The appellant *never* told the trial court he had to have the "books" in order to represent himself. Nor was his waiver of counsel conditioned upon the right to have the books and the time to prepare his defense, as the Court of Appeals suggests. While it is true that the appellant did request law books, it is not apparent that this request was intended by him as a condition precedent to his pro se application. To excerpt the five sentences referring to law books from the long colloquy between the court and the appellant and say that they cause the pro se request to become "conditional" would be to ignore the clear holding of the trial court (that appellant was not qualified to represent himself). While all appellate courts are faced with a cold record, it is clear in the instant case that the trial judge based his careful decision on the *total* dialogue between he and the appellant. To excerpt five sentences from seven pages of the record and give them special significance would be to grossly distort the meaning and importance of what was said. Such selective interpretation by an appellate court is also patently unfair to this trial judge and also to every trial judge faced with the same situation in the future. We therefore find that the conclusions of the appellate court are not supported by the record. Our finding, that the pro se request was not conditional, is further supported by the dialogue which ensued wherein the appellant made unequivocal demands to proceed pro se, *Brown v. Wainwright,* 665 F.2d 607, 610 (5th Cir.1982); *Burton,* supra, and in fact his response to the trial judge after being informed he was unqualified to represent himself was unequivocal.[4] It seems from the record,

---

**3.** One may be disenfranchised of this right, of course, by the *conduct* of an accused, i.e., if the right is sought to be coupled with contumacious or disruptive conduct, *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), or is exercised in order to delay the proceedings,

*Chapman v. United States,* 553 F.2d 886 (5th Cir.1977).

**4.** Appellant's response was:
"Like I said before, Your Honor, and as you said yourself, it is my Constitutional right and

therefore, that the appellant's demand for pro se representation was unconditional.

■ While acknowledging that a request for change of counsel cannot be made so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice, *Renfro v. State*, 586 S.W.2d 496 (Tex.Cr.App.1979), there is no suggestion in the record that appellant's assertion of his pro se right was designed to achieve delay or tactical advantage, or that it would in fact have resulted in any delay, or that the trial court denied appellant's request on the assumption that it would result in delay. While this court has held that the accused may not wait until the day of trial to demand *different* counsel or to request that counsel be *dismissed* so that he may *retain* other counsel where this results in a delay of the proceedings, *Robles v. State*, 577 S.W.2d 699 (Tex.Cr. App.1979), such is not the situation in the case at bar. Appellant neither demanded the appointment of different counsel nor did he ask that his attorney be dismissed so that he could retain other counsel. He merely asserted his constitutional right to represent himself at trial.

■ The appellant's assertion of the right to defend pro se was made timely in that it was asserted before the jury was empaneled. *Chapman v. United States*, 553 F.2d 886, 894 (5th Cir.1977). See also, *United States v. Price*, 474 F.2d 1223, 1227 (9th Cir.1973); *United States v. Doughterty*, 473 F.2d 1113, 1119 and 1124 (D.C. 1972); and *United States ex rel. Maldonado v. Denno*, 348 F.2d 12, 16 (2d Cir.1965), cert. denied, 384 U.S. 1007, 86 S.Ct. 1950, 16 L.Ed.2d 1020 (1966).

"The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant—not an organ of the State interposed between an unwilling defendant and his right to defend himself personally. To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment. In such a case, counsel is not an assistant, but a master; and the right to make a defense is stripped of the personal character upon which the Amendment insists." *Faretta*, supra at 820, 95 S.Ct. at 2533–2534.

■ Despite the trial judge's benevolent intentions, the denial of appellant's right to self representation under the facts of this case [5] constituted reversible error.

The judgments of the trial court and the Court of Appeals are reversed and cause is remanded to the trial court.

CLINTON, Judge, concurring.

I find the issue in this case to be much closer than the majority and therefore concur only in the judgment of the Court.

### THE FACTS

The record reflects that on March 30, 1981, the day of trial, the trial court was informed by appointed counsel that appellant wished to represent himself. Appellant affirmed this, and the trial judge observed, "Of course, the law says you have a constitutional right—"

Not waiting for the judge to finish, appellant interrupted, "That's right."

therefore, I am going to take that Constitutional right."

The Fifth Circuit in *Brown*, supra, noted that: "A defendant is entitled to conduct his own defense even if the court doubts his legal expertise or ability so long as the request is intelligently and clearly made. [citing *Faretta*, supra 422 U.S. at 835, 95 S.Ct. at 2541.] Neither should it be read to indicate that a defendant, to avoid waiver, must continually renew his request to represent himself even after it is conclusively denied by the trial court. After a clear denial of the request, a defendant need not make fruitless motions or forego cooperation with defense counsel in order to preserve the issue for appeal." *Brown*, supra at 612.

5. Compare *Wiggins v. State*, 520 S.W.2d 780, 782 (Tex.Cr.App.1975), affirmed *McKaskle v. Wiggins*, —— U.S. ——, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) where the trial judge in the proper exercise of judicial discretion appointed an attorney as standby counsel to assist the defendant if needed.

The trial judge completed his sentence: "—and providing that you have the ability."

Appellant assured the court he did have the ability, so the latter began to inquire as to the former's "educational background;" this inquiry was clearly required in every case by decisions of this Court at the time of appellant's trial.[1] It quickly became apparent that appellant was being less than truthful with the trial court: At first he said he had taken "about six years of college" from "Columbia;" but on further inquiry he said,

"Columbia, a university in South Carolina. It is just a small town college. *I don't remember the name of it.*"[2]

Upon the trial court's expression of incredulity, appellant explained, "... it has been years since I have been there."[3] Appellant stated he had not graduated from college; when asked how many hours he had accrued in six years, he replied, "I really couldn't say right now."

The trial judge then asked whether appellant had taken "any courses in law down there." Appellant replied, "No, I studied that on my own." Then the following exchange:

"THE COURT: How did you study law?

Defendant: I went to the library and got books.

THE COURT: When did you do that?

Defendant: *While I was there.*

THE COURT: While in college?

Defendant: *No, not while in college,* in later years.

THE COURT: What books did you study?

Defendant: United States constitutional law.

THE COURT: *You mean the Constitution itself?*

Defendant: *Yes, and the Amendments.*

THE COURT: Did you read any other books?

Defendant: I studied the Constitution and constitutional amendments. That is about it.

THE COURT: *And no other, you didn't study any other law?*

Defendant: *No.*"

Next the court inquired about appellant's work activities since college, then told him he should understand that the court would not be able to help him "on anything" if he were to represent himself, telling him, "You are on your own." Appellant assured the judge he was not expecting the court to help him represent himself, but when it became clear appellant did not know what "the voir dire part of a trial is," appellant asserted, "I would have to see the books."

On questioning, appellant stated clearly his intention and understanding that in representing himself, he was "going to be bound by the law," but the trial court, apparently sensing appellant's drift regarding "books," warned him:

"The court is going to *assume* you know the law and if you don't know the law, it is at your own risk and peril."

1. In *Martin v. State,* 630 S.W.2d 952 (Tex.Cr. App.1982) the Court held such an inquiry is unnecessary in cases where the record otherwise reflects a knowing exercise of the right to selfrepresentation; in so doing, *Martin,* supra, distinguished the requisites for a pure "waiver of counsel" showing from what is required to show a "relinquishment of benefits associated with the right to counsel" which necessarily accompanies the knowing exercise of the right to selfrepresentation contemplated by *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

Thus, it is essential to note that *Martin,* supra, modified all prior decisions of the Court in cases involving an assertion of the selfrepresen-

tation right, to the extent that their focus was on the traditional "waiver of counsel" inquiry, rather than that circumscribed by *Faretta,* supra.

2. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

3. Upon completion of six years of college the average person would be approximately 24 years old. The record reflects appellant was 31 years old at the time of trial. Thus he was telling the trial court that over the course of seven intervening years he had forgotten the name of a college he attended for six years.

When appellant claimed he understood, the trial judge said, "Okay. Do you understand that it is up to you to subpoena any witnesses that you have. Do you know how to do that?"

While it is clear *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) does not require the accused to be qualified, in a legal sense, to competently conduct a defense, at this point something in addition to appellant's "qualifications" was at issue; the trial judge was attempting to point out to appellant the severity of the mistake he was about to make should he insist on selfrepresentation: The court first informed him it would be assumed he knew the law, then commenced a Socratic demonstration to appellant that he, in fact, knew not the first thing about conducting a trial and was therefore exposing himself to great danger.

Once the point sank in, appellant told the court:

"Yes, *but I also* have to be provided with the books."

Appellant's understanding of the situation seemed to be that he knew he was "on his own," and therefore would be bound by the law and would receive no assistance in conducting his defense from the trial judge; he was willing to accept this, however, because he believed the State of Texas was required to provide him "with the books" necessary to conducting his own defense.

The trial judge fed his own understanding back: "You are making a request for books?" Appellant was quick to inform the judge, "That is part of my constitutional rights." "What books do you want, sir?" asked the trial judge. Appellant replied:

"Constitutional law. I want books parallel to my own case, parallel to that, like the State versus so and so, or so and so versus the State of Texas, or whatever."

At this point, the trial judge was surely thinking of the amount of time this accused would require in order to do even minimal legal research, if not wondering why on earth he would want to invoke the right to selfrepresentation at all.

Returning to his Socratic technique, the trial court asked appellant if he knew what the "best evidence rule" is. "It has been a while since I studied. You will have to excuse me on that," replied appellant. Knowing the best evidence rule is neither contained in the Federal Constitution nor its Amendments—the only thing appellant said he had studied—the judge then asked him if he knew "the definition of robbery and aggravated robbery," the offense charged. Appellant again begged off: "Like I said, it has been a while since I studied this stuff."

The trial court asked appellant if he knew the grounds for challenging a prospective juror for cause,[4] how many peremptory challenges he was allowed,[5] "basically what a hearsay objection is;"[6] and "what the Fourth Amendment is about." To this last question regarding the Fourth Amendment, appellant reinvoked (but for the first time, appropriately,) the "many years" it had been since he had "studied," presumably the Federal Constitution and its Amendments.

Asked by the trial judge, "You don't know what the Fourth, Fifth or Sixth Amendments are?," appellant assured him, "I know the freedom of speech, freedom of press, and so forth and so on." Then, the final colloquy:

"THE COURT: Do you know what elements the State must prove against you?

Defendant: They have to prove I am guilty or I am not.

THE COURT: Sir?

Defendant: They have to prove beyond a reasonable doubt, beyond a shadow of

---

4. "Prejudice is one. * * * In my case, since I do have long hair and I do look like a so-called hippie, a lot of people think about that. That would be proper."

5. "Three, I believe."

6. "That is hearsay evidence that hasn't been proved. Well, in other words, it is like someone sees you do something but they are not quite sure it was you or not. That is hearsay."

a doubt that I am guilty of what they say, or I am innocent.

THE COURT: You don't know what elements they have to prove?

Defendant: They have to prove that I was there at the time, what is stated in the statements against me is true and they have to prove it.

THE COURT: All right, Mr. Blankenship—

Defendant: Yes, sir.

THE COURT: *I don't think you are qualified to represent yourself in Court.*

Defendant: Like I said before, Your Honor, and as you said yourself, it is my constitutional right *and therefore, I am going to take* [7] *that constitutional right.*

THE COURT: I overrule you this time. You will be represented by Mr. Quijano in this case. That is all."

## CONSTITUTIONAL LIMITATIONS ON THE RIGHT

While the court of appeals characterized appellant's claim of his right to selfrepresentation as "conditional," it appears the essential question presented is whether the trial court was justified in denying appellant's assertion of his right to selfrepresentation and in forcing an unwanted lawyer upon him under the totality of the circumstances presented.

The Supreme Court noted in *Faretta* that, like other constitutional rights, the right to selfrepresentation is not absolute: "... the trial judge may terminate selfrepresentation by a defendant who deliberately engages in serious and obstructionist misconduct." 422 U.S. at 834, n. 46, 95 S.Ct. at 2541, n. 46. This proposition follows from *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), wherein the Supreme Court was constrained to limit Allen's right to be present during his trial and perforce his basic Sixth Amendment right to confrontation.

The Court's conclusion in *Allen,* supra, was bottomed on the principle that,

"It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations."

397 U.S. at 343, 90 S.Ct. at 1061. After concluding "Allen lost his right guaranteed by the Sixth and Fourteenth Amendments to be present throughout his trial," the Supreme Court observed:

"It is not pleasant to hold that the respondent Allen was properly banished from the court for a part of his own trial. But our courts, palladiums of liberty as they are, cannot be treated disrespectfully with impunity. Nor can the accused be permitted by his disruptive conduct indefinitely to avoid being tried on the charges brought against him. It would degrade our country and our judicial system to permit our courts to be bullied, insulted, humiliated and their orderly

---

7. Appellant's choice of the verb "take" in the context of this entire litany is interesting.

According to Webster's Seventh New Collegiate Dictionary (1969), the verb "take" means: "1: to get into one's hands or into one's possession, power, or control: as a: to seize or capture physically b: to get possession of ... c: to move against ... and remove from play: win d: confiscate * * * 6: to transfer into one's own keeping: a: appropriate b: to obtain or secure for use * * * 8a: to secure by winning in competition b: defeat * * * 10: to adopt, chose or avail oneself of for use; as a: to have recourse to as an instrument for doing something b: to use as a means of ... progression c: to have recourse to for safety or refuge * * * 12d: to indulge in and enjoy * * * 18c: to apply oneself to the study of...."

Synonyms mentioned are "seize, grasp, clutch, snatch, grab."

The most appropriate phrase mentioned is, "take advantage of 1: to use to advantage: profit by 2: to impose upon: exploit."

progress thwarted and obstructed by defendants brought before them charged with crimes. As guardians of the public welfare, our state and federal systems strive to administer equal justice to the rich and the poor, the good and the bad, the native and foreign born of every race, nationality and religion. Being manned by humans, the courts are not perfect and are bound to make some errors. But if our courts are to remain what the Founders intended, the citadels of justice, their proceedings cannot and must not be infected with the sort of scurrilous, abusive language and conduct paraded before the Illinois trial judge in this case. * * *

We do not hold that removing this defendant from his own trial was the only way the Illinois judge could have constitutionally solved the problem he had. We do hold, however, that there is nothing whatever in this record to show that the judge did not act completely within his discretion. Deplorable as it is to remove a man from his own trial, even for a short time, we hold that the judge did not commit legal error in doing what he did."

397 U.S. at 346–347, 90 S.Ct. at 1062–1063.

By quoting *Illinois v. Allen* to this extent my intent is not to equate the conduct of our appellant with that of Allen—indeed a full reading of that case would reveal any such suggestion to be ludicrous—but, rather, to acknowledge that constitutional rights must be asserted and exercised in a manner not inconsistent with the trial judge's control over the orderly administration of justice in his court. From *Allen*, it can be gleaned that an obstruction of orderly proceedings is not limited to disruptions occurring midtrial, but may also be constituted by unreasonable delay at any stage of the process.

The Supreme Court guaranteed in *Faretta* "that forcing a lawyer upon an unwilling

defendant is contrary to his basic right to defend himself *if he truly wants to do so.*" 422 U.S. at 817, 95 S.Ct. at 2532. But sometimes determining what the accused "truly wants," what his true intent is, is the critical issue.

Thus, in *Chapman v. United States*, 553 F.2d 886 (CA5 1977), the Court inferred from *Faretta* the requirement "that the demand to defend pro se be *stated unequivocally,*" [8] because "a decision to defend pro se may jeopardize a defendant's chances of receiving an effective defense, and because a pro se defendant cannot complain on appeal that his own defense amounted to a denial of effective assistance of counsel." 553 F.2d 892–893. The Fifth Circuit also considered the fact that three other circuit courts had held the right to selfrepresentation is timely if asserted before the jury is impaneled, "at least where there is *no suggestion* that the motion to defend pro se is a tactic to secure delay," 553 F.2d at 894, and observed:

"... there is *no suggestion in the record* that Chapman's assertion of his pro se right was *designed to achieve delay or tactical advantage*, that it would in fact have resulted in any delay, or that the trial court denied Chapman's request on the assumption that it would result in delay. * * *

In sum, Chapman should not have been denied his constitutional right to represent himself on the ground that his assertion of the right was untimely. He asserted the right before the jury had been impaneled and *there is no suggestion that he sought to delay or disrupt the trial.*"

While this Court is not bound by opinions of federal courts of appeals, it is clear that the cited circuit court decisions have struck an appropriate balance between the questioned individual constitutional right and the necessity for orderly procedure in the courts of the land.[9]

8. See also *Brown v. Wainwright,* 665 F.2d 607 (CA5 1982); *United States v. Brown,* 591 F.2d 307 (CA5 1979) *cert. denied* 442 U.S. 913, 99 S.Ct. 2831, 61 L.Ed.2d 280 (1979); *United States v. Jones,* 580 F.2d 785 (CA5 1978).

9. The court below relied on *Robles v. State,* 577 S.W.2d 699 (Tex.Cr.App.1979); *Webb v. State,*

## APPELLATE REVIEW

The record in the instant case contains "a suggestion" that appellant's assertion of his pro se right was in fact designed to achieve delay or tactical advantage, but nothing more.

From the cold record, three things about appellant and his state of mind may be gleaned: he had no hesitation about dissembling to the trial judge; he knew not the first thing about the operation of a criminal trial nor governing substantive law (other than that a constitutional right to self-representation exists); he was of the belief that his pertinent constitutional rights embodied not only the right to personally conduct his own defense, but also the right to have the State of Texas provide him with germane legal research materials, and, inferably, time *to study them in order to prepare that defense.*[10]

With these facts established by the plain words reflected on the record, it is apparent that an intent to manipulate the proceedings by unreasonable delay or otherwise may well have been evidenced between the lines by appellant's bearing and demeanor, and readily perceived by those present. Thus had the trial judge stated that such was his perception either orally or in written findings entered of record, I would be inclined to defer to his personal observations.

533 S.W.2d 780 (Tex.Cr.App.1976); *Thompson v. State,* 447 S.W.2d 920 (Tex.Cr.App.1969); and *Estrada v. State,* 406 S.W.2d 448 (Tex.Cr.App. 1966) for the proposition that "a request for a change of counsel, whether it be for another attorney, *or to act for one's self,* cannot be made so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice."

While this may be a correct statement of the law, I notice that none of the cases cited involved an assertion of the right to selfrepresentation. See also *Renfro v. State,* 586 S.W.2d 496 (Tex.Cr.App.1979). Thus, any discussion therein of *Faretta* or the right to proceed pro se is *obiter dictum.*

Moreover, the genesis of the proposition can be traced through each of the cited cases to *United States v. Bentvena,* 319 F.2d 916 (CA2 1963), but a reading of that case reveals no reference at all to selfrepresentation.

The trial judge apparently did make written findings and conclusions regarding his ruling, but failed to have them entered in the record of this cause.[11] I say this because appellant acknowledged their existence in the court below, and no protest was voiced by the State. The record does not indicate whether the court of appeals attempted to obtain the document in question, but the Clerk of this Court was ordered to do so. The district clerk of Hudspeth County was unable to find any such document in the trial court's file of this cause. Thus, there are no written findings available. But even if we considered the findings which are set out in appellant's brief filed below, they do not indicate the trial court's ruling was based on his sense that appellant intended to exploit his right of selfrepresentation to disruptive ends:

"... the Defendant's request for law books and other material in order to represent himself was unreasonable and would have resulted in undue delay of the trial."

"[Appellant] did not possess the education he claimed to have" and "did not have the capability to knowing [sic] and intelligently waive his right to counsel."

Instead, the focus of these written findings is really in the same plane as the trial judge's oral observations: appellant's "ability" to represent himself.

10. Appellant's argument made in the court of appeals that the request for selfrepresentation and the request for law books "[were] simply not related in any relevant way" is untenable upon a faithful reading of the colloquy as a whole.

11. In the court of appeals, appellant's brief averred the trial judge's conclusion "is contained in a document styled 'Court's Finding of Fact and Conclusions of law,' signed at some date after the trial. It does not appear in the copy of the approved record on appeal available to the parties for use in preparing their appellate briefs, and thus the absence of proper citation here. * * * Therefore, should the Court of Appeals wish to supplement the appellate record on its own motion, the appellant prospectively waives any objection. See V.A.C.C.P., Art. 40.09(7)."

Appellant argues the trial court should have directly advised him, in plain language, that he had no right to law books, then given effect to his *Faretta* right. Truly, the better course would have been to so advise appellant, warn him that his right to selfrepresentation would be terminated if used to delay or obstruct the proceedings in any unreasonable fashion and then allow it until such time deliberate misconduct or abuse to the court occurred. *Faretta*, supra, 422 U.S. at 834, n. 46, 95 S.Ct. at 2541, n. 46.

This Court is well aware of the conceptual difficulties *Faretta* has caused the bench and bar. Recognition of the right to selfrepresentation has created a conflict with another independent constitutional right—the right to assistance of counsel—which is unique in the corpus of constitutional law. Predictably this conflict has rapidly become the bane of judges, both trial and appellate, as well as members of the criminal bar, both defense and prosecution. For, given the right to assistance of counsel is so embedded in our collective consciousness of fairness and is doubtless the most jealously guarded of all criminal rights (coupled with awareness of judges and prosecutors that it assists *them*, too, in their respective roles in the judicial process), the notion that it may be implicitly waived by a recalcitrant defendant demanding selfrepresentation has not not been met with open arms, much less open minds.

Consequently, our initial focus after *Faretta*, was on the traditional "waiver of counsel" requisites: this focus seemed to justify virtual wholesale denial of the *Faretta* right. See, e.g., *Barbour v. State*, 551 S.W.2d 371 (Tex.Cr.App.1977); *Goodman v. State*, 591 S.W.2d 498 (Tex.Cr.App.1980); *Geeslin v. State*, 600 S.W.2d 309 (Tex.Cr. App.1980). Thus, at the time the instant case was tried, the state of the law placed our trial judges between the proverbial rock and hard place: to deny selfrepresentation offended *Faretta;* to allow it almost assured reversal by this Court. See *id.* In *Martin v. State*, 630 S.W.2d 952 (Tex.Cr. App.1982) we recognized that the above cases had written into the law of selfrepresentation exacting requisites, uncontemplated by *Faretta.*[12]

In sum, though not without our share of difficulty, we were back on course in this perilous area of constitutional law.

Today, the hope is to provide and clarify guidelines so that trial judges may know they are not at the mercy of those who seek to disrupt or denigrate the very process designed to protect them. But by the same token, I hasten to add, *trial judges should be loath to deny the right to selfrepresentation.* The cold record before us suggests that by personally observing appellant's demeanor, one might conclude that his real intent was to exploit the right of selfrepresentation to manipulative or disruptive ends. But without an express finding by the trial court to that effect appellate courts cannot presume it under such an ambiguous record. To do so would be tantamount to a holding that *any* accused, unlearned in the law, would delay proceedings so as to justify denial of the right.[13]

A trial judge is obliged to make an accused aware of the dangers and disadvantages of selfrepresentation; to illustrate to him, as was done here, what an austere mistake he is about to make; to tell him he will be bound by the law and given no special consideration or assistance; to advise him his selfrepresentation will be terminated should it be manipulated so as to obstruct orderly procedure in the court or to interfere with the fair administration of

---

12. See also *Brown v. Wainwright*, supra, at 611: "... [T]he cases cited by defendant which establish stringent requirements for waiver of counsel, see, e.g., *Ford v. Wainwright*, 526 F.2d 919 (CA5 1976), do not apply in full force to the right of selfrepresentation."

13. It is not the accused's ignorance of the law which is critical, but rather his apparent willingness to be untruthful with the trial court to effect his own designs, which could evince an intent to abuse the judicial process. And there is no question that in such a case, findings and conclusions of the trial court could supply the determining factor.

justice, then allow him to proceed pro se. If he thereafter seeks to abuse his right to ends discussed here, the right may be terminated. The record before us does not adequately establish Blankenship was being or would have been the disruptive force which might justify an *ab initio* denial of the right.[14] Thus, the judgment of the court of appeals must be reversed. To that extent, I concur in the judgment of the Court.

McCORMICK, J., joins.

14. Indeed, though we cannot know what course appellant would have followed in conducting his defense, that appointed counsel did not ask a single question of any one of five witnesses examined by the State, nor offer any defensive evidence whatsoever, is a telling relevation that appellant had no defense to present. Testifying on punishment, appellant in effect "threw himself on the mercy of the jury."