Opinion filed February 26, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed February 26,
2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-07-00233-CR

                                                       ________

 

                                   FREDDIE
ALCONTOR, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                          On
Appeal from the 91st District Court

 

                                                        Eastland
County, Texas

 

                                                Trial
Court Cause No. CR-21,135

 



 

                                             M
E M O R A N D U M   O P I N I O N

Freddie
Alcontor appeals his conviction by the trial court of the offense of debit card
abuse.  The court sentenced him to two years in the Texas Department of
Criminal Justice, State Jail Division.  He contends in three issues that the
trial court erred in failing to appoint new trial counsel to represent him
after his court-appointed attorney withdrew from the case two days before
trial, that the trial court erred by failing to properly admonish him about the
risks of self-representation, and that the evidence is legally and factually
insufficient to support his conviction.  We affirm.








Alcontor
contends in Issue Three that the evidence is legally and factually insufficient
to support his conviction.  In order to determine if the evidence is legally
sufficient, the appellate court reviews all of the evidence in the light most
favorable to the verdict and determines whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt.
Jackson v. Virginia, 443 U.S. 307, 319 (1979).  To determine if the
evidence is factually sufficient, the appellate court reviews all of the
evidence in a neutral light. Watson v. State, 204 S.W.3d 404, 414 (Tex.
Crim. App. 2006) (overruling in part Zuniga v. State, 144 S.W.3d 477
(Tex. Crim. App. 2004)); Johnson v. State, 23 S.W.3d 1, 10-11 (Tex.
Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407-08 (Tex. Crim. App.
1997); Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996).
Then, the reviewing court determines whether the evidence supporting the
verdict is so weak that the verdict is clearly wrong and manifestly unjust or
whether the verdict is against the great weight and preponderance of the
conflicting evidence. Watson, 204 S.W.3d at 414-15; Johnson, 23
S.W.3d at 10-11.

Emiley
Jane Roberson Crawford testified that on April 12, 2006, she had
unintentionally left her debit card in an Eastland convenience store after
purchasing some soft drinks.  She indicated that, while she knew Louterrie
Pittman, she had not given either her or Alcontor permission to use her debit
card.

Deputy
Sheriff Windell Earl Light testified that, one day after Eastland police had
obtained statements from Louterrie Pittman and Alcontor, he had a confrontation
with Alcontor in a grocery store parking lot.  Deputy Light indicated that he
told Alcontor that he was accused of using a debit card and that Ait looked like he was
definitely the one that used it.@ 
Deputy Light related that, when Alcontor asked what they had found out, he told
him that they had found out he used the Acredit@ card.  According to Deputy
Light, Alcontor responded, AWhat
are you going to do about it?@
in a very threatening manner.  He said that, when he told Alcontor that
Eastland police would probably get a warrant issued for him and arrest him,
Alcontor responded, AI
would like to see them try to do so.@ 
When Deputy Light said that he would actually arrest Alcontor if a warrant was
issued, Alcontor responded, AI=d like to see you try.@  Deputy Light indicated
that he felt very threatened by Alcontor at that time.  Deputy Light related
that, after failing to appear in court in Eastland for arraignment, Alcontor
was arrested in Breckenridge.








Dustin
Deon Trader testified that he is a police officer for the City of Eastland.  He
identified Alcontor as an individual who, along with Louterrie, had approached
the convenience store counter together after Crawford, the complainant, left. 
He related that Louterrie had indicated in a statement that Alcontor had
motioned his eyes toward the card prior to Louterrie taking the card.  Officer
Trader insisted that Pittman had told him that, after she had given a statement
that did not implicate Alcontor, she had come back and made a second statement,
charging that Alcontor and his nephews were making threats toward them and
driving by their house.  According to Officer Trader, Louterrie was fearful of
harm from Alcontor.  He indicated that Louterrie and Alcontor were coworkers
who had arrived and left the convenience store together on the day the debit
card was taken.

Officer
Trader testified that the card was used by Louterrie the day after it was taken
from the convenience store.  He indicated that Louterrie used the card
belonging to Crawford to fill up her vehicle and subsequently, after a
conversation with Alcontor, used the card to fill up his vehicle as well. 
Officer Trader related that the transaction details of the fueling of the two
vehicles and Crawford=s
bank transaction statement were a perfect match.

James
Matthew Mull, employed by the Texas Department of Public Safety with the
Criminal Intelligence Service, testified that, during a second interview,
Alcontor became extremely aggressive and his general manner was threatening.

Louterrie
testified that, before Alcontor was incarcerated, he had threatened to hurt or
kill her husband.  She indicated that he would follow them and come up and down
their street.  She related that Alcontor also threatened her husband at his
place of employment.  Louterrie acknowledged seeing Crawford=s card on the counter and
taking it.  She said that she and Alcontor were together at the time and that,
prior to her grabbing the card, he was shifting his eyes toward the card in a
way that she interpreted as suggesting that she grab the card.  She insisted
that she believed he saw her grab the card because he was standing by her at
the time.  She related that, the next day after the card was taken, she and
Alcontor were at the convenience store and that they discussed using the card
to put gas in Alcontor=s
vehicle.  She acknowledged that she swiped the card belonging to Crawford and
that Alcontor placed gas in his vehicle.  She testified that Alcontor knew she
was using Crawford=s
card to pay for the gas.  Louterrie admitted that neither she nor Alcontor had
permission to use Crawford=s
card.

Victor
Allen Pittman Jr. testified that Alcontor came up to him at his place of
employment and asked why Ashe@ was so stupid as to do all
that.  Victor indicated that, when he told Alcontor that he had found out that
Alcontor apparently was involved more than he was saying, Alcontor told him
that he Adidn=t want to f--k with him,
and that if we tried to say that he f-----g did it, that he would take care of
us.@  








Alcontor
made a final statement in which he said that, at the time the gas was
purchased, he never got out of his vehicle.

Alcontor=s sole contention with
respect to the sufficiency of the evidence is that the State relied upon the
testimony of Louterrie, an accomplice, and that her testimony was not
sufficiently corroborated.  A conviction cannot be had upon the testimony of an
accomplice unless corroborated by other evidence tending to connect the
defendant with the offense committed, and the corroboration is not sufficient
if it merely shows the commission of the offense.  Tex. Code Crim. Proc.
Ann. art. 38.14 (Vernon 2005).  There must be some non-accomplice evidence,
either direct or circumstantial, that tends to connect the accused to the
commission of the offense alleged in the indictment.  Gill v. State, 873
S.W.2d 45, 48 (Tex. Crim. App. 1994); Reed v. State, 744 S.W.2d 112,
124-25 (Tex. Crim. App. 1988).  We must eliminate from consideration the
accomplice testimony and then examine the remaining testimony and evidence to
determine whether the other inculpatory facts and circumstances tend to connect
appellant with the commission of the offense.  Munoz v. State, 853
S.W.2d 558, 559 (Tex. Crim. App. 1993).  The non-accomplice testimony does not
have to directly link appellant to the crime or alone establish guilt beyond a
reasonable doubt.  Gill, 873 S.W.2d at 48.  As we have noted, the
non-accomplice testimony showed that, after Crawford left her card on the
counter at an Eastland convenience store, Louterrie and Alcontor were at the
store together and together they approached the counter right after Crawford
left.  The non-accomplice testimony also shows that Louterrie and Alcontor
returned to the convenience store the next day and that Louterrie used Crawford=s card to purchase gas for
herself and for Alcontor.    

There
is also evidence from non-accomplices that Alcontor spoke to more than one
investigating officer in a very threatening manner and that he had approached
Louterrie=s husband at
his place of employment and threatened him and his family if they tried to say
he did it.  In Texas, evidence that a witness has been
threatened or that someone has attempted to coerce his or her testimony is
admissible to show the accused=s
consciousness of guilt. See Brown v. State, 657 S.W.2d 117, 119 (Tex.
Crim. App. [Panel Op.] 1983) (threats against witness=s family); Rodriguez v.  State,
577 S.W.2d 491, 492-93 (Tex. Crim. App. [Panel Op.] 1979) (threats
against State=s
witness).  Threats or other attempts at coercion are Ahardly the actions of an innocent accused,@ and evidence of such is
every bit as probative of guilt as would be flight by the accused.  Rodriguez,
577 S.W.2d at 493.








Considering
all of the testimony, we hold that the non-accomplice testimony does tend to
connect Alcontor with the commission of the offense.  Consequently, we hold
that the evidence is legally and factually sufficient to support the
conviction.  While Alcontor mentions the threatening manner he displayed in his
conversations with investigating officers, he does not make reference to it or
to his threats directed at Louterrie=s
husband in his argument that the evidence is insufficient.  Even if, as
Alcontor suggests, evidence that Alcontor was at the convenience store the day
after Louterrie took Crawford=s
card and that Louterrie purchased gas for Alcontor=s vehicle with that card is insufficient to
connect Alcontor with the commission of the offense, we hold that such
evidence, when coupled with Alcontor=s
threatening attitude toward law enforcement officers and his threats directed
at Louterrie=s
husband, is sufficient to connect him with the offense.  We overrule Issue
Three.

Alcontor
urges in Issue Two that the trial court erred by failing to properly admonish
him about the risks of self-representation, as required by Faretta v.
California, 422 U.S. 806 (1975).  A State may not constitutionally force a
lawyer upon a defendant in a criminal case, even when he or she insists upon
wanting to conduct the defense.  Faretta, 422 U.S. at 807.  Although a
defendant need not himself or herself have the skill and experience of a lawyer
in order to competently and intelligently choose self-representation, he or she
should be made aware of the dangers and disadvantages of self-representation,
so that the record will establish that Ahe
knows what he is doing and his choice is made with eyes open.@  Faretta, 422 U.S.
at 835.  

Two
days before trial, a hearing was held on a motion to withdraw filed by Alcontor=s counsel.  Alcontor
indicated that he was in favor of the court=s
granting the motion.  After noting that the trial was set in two days, the
trial court asked Alcontor what his intentions were and whether he intended to
represent himself.  When Alcontor answered, AI
would do it,@ the
trial court asked him if he wished to do so, and Alcontor responded that he
did.








The
trial court told Alcontor that he was satisfied that his counsel could
effectively and competently represent clients in these cases and that he had
extensive training that would allow him to represent a defendant in a case such
as this.  The trial court asked Alcontor if he realized that, if he were to
proceed without an attorney, he would not have that same type of training. 
Alcontor responded that he did.  Alcontor also acknowledged that he realized
that that would place him at a disadvantage but that he was willing to accept
that in representing himself.  The trial court repeated the quote about an individual
who represents himself or herself having a fool for a client, to which Alcontor
responded, AYou never
know.  We=ll see.@  When asked by the trial
court, Alcontor stated that he understood that it was not always the best
decision to represent oneself.  The court ascertained that Alcontor had a
G.E.D. and that he had previously witnessed court proceedings and was familiar
with what is ordinarily required in a court proceeding.

Alcontor
testified that there was no physical or mental condition that would keep him
from having a clear understanding of what he was doing, that he was not taking
any medications that would have any effect on what he was doing, and that he
was fully competent to proceed.  He indicated he was aware that he faced a
state jail felony and that he was looking at up to two years in a state jail
facility.  After the trial court discussed how the trial would proceed,
Alcontor testified that he understood.  Alcontor indicated that he was prepared
to make appropriate objections to preserve a basis for an appeal.  He repeated
that he was requesting that he be allowed to represent himself, that he did not
feel pressured to do so, and that no one had forced or coerced him in any way
to make that request.  He stated that he was not under any duress, coercion, or
any hope of lighter punishment for any sentence.  We find that the trial court
adequately made Alcontor aware of the dangers and disadvantages of
self-representation and that the record establishes that Alcontor knowingly,
intelligently, and voluntarily decided to forgo his right to counsel and assert
his right to represent himself.  

Alcontor
suggests that the trial court=s
admonishments were inadequate because there was no discussion about the nature
of the crime and the State=s
burden of proof or the complexities of accomplice witness testimony and party
liability.  As we have previously noted, the Court in Faretta requires
the trial court to make the defendant aware of the dangers and disadvantages of
self-representation so that the record will establish that Ahe knows what he is doing
and his choice is made with eyes open.@ 
The record shows the trial court made Alcontor aware of the dangers and
disadvantages of self-representation and establishes that Alcontor knew what he
was doing and that his choice was made Awith
eyes open.@  

The
omissions of which Alcontor complains are not referred to in Faretta. 
Alcontor relies upon a quotation from the case of Von Moltke v. Gillies,
332 U.S. 708, 723-24 (1948), a quotation contained in the court=s opinion in Blankenship
v. State, 673 S.W.2d 578, 583 (Tex. Crim. App. 1984).  The court stated:








A judge must investigate as long
and as thoroughly as the circumstances of the case before him demand.  The fact
that an accused may tell him that he is informed of his right to counsel and
desires to waive this right, does not automatically end the judge=s responsibility.  To be
valid such waiver must be made with an apprehension of the nature of the
charges, the statutory offenses included within them, the range of allowable
punishments, thereunder, possible defenses to the charges and circumstances in
mitigation thereof, and all other facts essential to a broad understanding of
the whole matter.  A judge can make certain that an accused=s professed waiver of
counsel is understandingly and wisely made only from a penetrating and
comprehensive examination of all the circumstances under which a plea is
tendered.

 

Blankenship, 673 S.W.2d at 583 (quoting Von Moltke, 332
U.S. at 723-24).

Blankenship involved a case in which the court held that
the trial court erred by not allowing Blankenship to represent himself.  Blankenship,
673 S.W.2d at 585.  There was no issue in Blankenship as to what must be
contained in an admonishment the trial court must make before allowing a
defendant to represent himself or herself.  Consequently, we consider the
reference in Blankenship to the requirements set forth in Von Moltke
as dicta.  

Von Moltke is a 1948 case involving an
unrepresented defendant of German descent who had pleaded guilty to charges of
espionage.  Von Moltke, 332 U.S. at 709-10.  Von Moltke never asserted a
right to represent herself.  The admonishments referred to in the opinion are
those required when an unrepresented defendant is pleading guilty without the
benefit of counsel.  Id.

Faretta is a 1975 case dealing with the
admonishment required in a case such as the one at bar where the defendant has
asserted a right to represent himself.  We have examined Faretta and
found no requirement with respect to the admonishment that Alcontor complains
was omitted by the trial court.  We conclude that the trial court=s admonishment in this case
was sufficient because it complied with the requirements of Faretta.  We
overrule Issue Two.  

Alcontor contends in Issue One that the trial court
erred in failing to appoint new trial counsel after his counsel withdrew two
days before his trial.  Inasmuch as Alcontor had knowingly, intelligently, and
voluntarily chosen to represent himself, the trial court would have violated
his right to do so by appointing new counsel.  Alcontor urges that he did not
knowingly, intelligently, and voluntarily choose to represent himself because
the court did not appear to offer any other alternative than
self-representation, so that he Aostensibly
had no other choice, and no other choice was presented to him.@  








During
the colloquy between Alcontor and the trial court at the hearing on the motion
to withdraw, the trial court admonished Alcontor that it still found that he
would qualify for a court-appointed attorney.  At the conclusion of the
discussion, the trial court asked Alcontor if he understood that the court had
previously found him to be indigent and stated that, if he wished to change his
election, he could not repeat any proceedings because the court had previously
determined that he could receive the assistance of counsel.  Alcontor testified
that he understood that.  We overrule Issue One.

The
judgment is affirmed. 

 

PER CURIAM

 

February 26,
2009

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

Strange, J., and Hill, J.[1]









[1]John G. Hill, Former Justice, Court of Appeals, 2nd
District of Texas at Fort Worth, sitting by assignment.