NO. 07-03-0041-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JANUARY 31, 2005

_____

CLARENCE DANIEL PAXTON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 46TH DISTRICT COURT OF HARDEMAN COUNTY;

NO. 3782; HONORABLE TOM NEELY, JUDGE

_____

Before QUINN, REAVIS and CAMPBELL, JJ.

**MEMORANDUM OPINION**

Clarence Daniel Paxton was convicted by a jury of aggravated robbery over his plea of not guilty and sentenced to 20 years confinement in the Institutional Division of the Texas Department of Criminal Justice. He appeals the conviction and sentence. We will affirm the trial court's judgment.

Paxton presents eight points of error. By his points of error one and two, he contends the required evidence of his intent was legally and factually insufficient. Through points three and four, he makes the same contentions with respect to the evidence he used a deadly weapon while committing theft. Points five and six present Paxton's arguments he was wrongfully denied his right to represent himself granted by the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. By points seven and eight, Paxton contends he was wrongfully denied due process of law when he was brought before prospective jurors in jail clothes.

A Hardeman County grand jury indicted Paxton alleging that in that county on or about July 23, 2002, Paxton did "while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally or knowingly threaten or place Brett Ramirez in fear of imminent bodily injury or death, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a firearm."

At trial Ramirez testified he was working alone on that date as cashier at a small grocery store in Chillicothe, Texas, when a person he identified as Paxton entered and walked about the store. He inquired of Ramirez about the store's supply of duct tape and later asked to use the telephone. When Ramirez gave him the phone, Paxton pulled its cord from the handset,[1] pointed a small pistol at Ramirez and said, "Give me your money." Ramirez removed cash from both the store's registers and gave it to Paxton. Ramirez testified he was fearful during the encounter that Paxton might shoot him, causing him

---

[1]The testimony uses the term "headset."

death or injury. He followed Paxton's instructions to go to the back of the store and, after he heard Paxton's vehicle leave, told two entering customers of the robbery and locked the store.

Evidence including the testimony of law enforcement officers established that a Texas highway patrolman stopped Paxton's vehicle on U. S. Highway 287 outside Vernon because the vehicle matched the description broadcast over police radio. Examining the interior of the vehicle with Paxton's consent, the patrolman found a two-shot .22 caliber Derringer, which was admitted into evidence and identified by Ramirez as the gun the robber pointed at him. Paxton's vehicle also contained three boxes of .22 caliber ammunition, and a sports bag in which officers found $903 in cash. While the patrolman's attention was directed toward the vehicle's interior, Paxton left the scene on foot. A search ensued and he was arrested when he later approached officers. He was seventeen at the time.

A written statement prepared by a Texas Ranger and signed by Paxton within hours of his arrest also was among the evidence. In the statement Paxton admitted actions consistent with Ramirez's version of the events. It states, in part, "I had my uncle's two shot pistol . . . . I pulled the pistol out of my front right pants pocket. I told the guy can I have your money please. I felt bad about it. He sat the money on the counter."

Paxton's case at the guilt-innocence phase of trial was developed only through cross examination. He offered no testimony or other evidence.

In reviewing the legal sufficiency of the evidence, we look at all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); *Griffin v. State*, 614 S.W.2d 155, 159 (Tex.Crim.App. 1981). The standard for legal sufficiency review "gives full play" to the jury's responsibility "fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *Sanders v. State*, 119 S.W.3d 818, 820 (Tex.Crim.App. 2003). In a review of the record for factual sufficiency, we consider all the evidence in a neutral light, and will set aside the verdict if the evidence supporting it, either (1) standing alone or (2) when weighed against the contrary evidence, is too weak to establish the elements of the offense beyond a reasonable doubt. The analysis is to answer the single ultimate question: considering all the evidence in a neutral light, was the jury rationally justified in finding appellant guilty beyond a reasonable doubt? *See Zuniga v. State*, 144 S.W.3d 477, 481 (Tex.Cr.App. 2004); *Goodman v. State*, 66 S.W.3d 283, 285 (Tex.Crim.App. 2001).

## Points One and Two - Evidence of Intent

Under point of error one, Paxton argues the trial court erred by denying his motion for directed verdict because there was no evidence he had any intent to obtain and maintain control of the "said property" referred to in the indictment. The court's charge instructed the jury, in accordance with Penal Code Section 29.02(a), that robbery requires an "intent to obtain or maintain control of the property," and, in accordance with Penal Code

4

Section 6.03(a), that a person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result. *See* Tex. Pen. Code Ann. §§ 6.03(a), 29.02(a) (Vernon 2003). The court also instructed the jury that "property" means a document, including money, that represents or embodies anything of value. *See* Tex. Pen. Code Ann. § 29.01(2)(B).

The jury could infer Paxton's intent from his acts, words and conduct. *See Hernandez v. State*, 819 S.W.2d 806, 810 (Tex.Crim.App. 1991), *cert. denied* 504 U.S. 974, 112 S Ct. 2944, 119 L. Ed. 2d 568 (1992). *See also Manrique v. State*, 994 S.W.2d 640, 649 (Tex.Crim.App. 1999) (Meyers, J., concurring) (intent almost always proven through evidence of circumstances surrounding the crime). Ramirez's undisputed testimony, corroborated by Paxton's own statement, that Paxton took money from Ramirez at gunpoint, provides legally sufficient evidence that he acted with the intent to obtain or maintain control of the money. If further evidence of his intent were needed, it is provided by the evidence he placed the money in a bag in his vehicle and drove away with it.

Paxton argues in his second point that the evidence of his intent was factually insufficient, but does not point us to evidence he contends demonstrates the absence of the required intent. As noted, his written statement says he "felt bad" about his actions. It also states that as he left the store he "knew" Ramirez was going to call police, and that as he drove down the highway at 55-60 mph, he "figured" he would get caught. None of those statements weaken the inference that Paxton acted with the conscious objective of obtaining or maintaining control of the money. The evidence of his intent to do so is factually sufficient. Paxton's first and second points are overruled.

5

## Points Three and Four - Evidence of Deadly Weapon

Paxton's robbery of Ramirez was aggravated, the indictment alleged, because he used or exhibited a deadly weapon, a firearm. Paxton contends the evidence of his use or exhibition of a deadly weapon is legally and factually insufficient.

Penal Code Section 1.07(a)(17) includes a firearm within the definition of the term deadly weapon. *See* Tex. Pen. Code Ann. § 1.07(a)(17)(A) (Vernon Supp. 2004)*; Thomas v. State*, 821 S.W.2d 616, 620 (Tex.Crim.App. 1991). Because an object meets the definition of deadly weapon if it is a firearm, the State "must simply prove at trial that it was a firearm in fact." *Id.* at 620. As noted, the gun was in evidence. During the testimony of the Texas Ranger, he responded affirmatively to the district attorney's question whether he would describe the gun as a firearm. He further testified that the Derringer would shoot a .22 caliber bullet, and, responding to a question about the capability of a bullet shot from the gun to cause death or serious bodily injury, stated that to his knowledge more people are killed with .22s each year than any other caliber.

A person "uses or exhibits" a deadly weapon under Penal Code Section 29.03(a)(2) if he employs the weapon in any manner that facilitates the associated felony. *McCain v. State*, 22 S.W.3d 497, 502 (Tex.Crim.App. 2000). Again, Ramirez's undisputed testimony that Paxton pointed the gun at him, corroborated by Paxton's own statement, provide ample evidence from which a rational jury could have found Paxton used or exhibited a firearm while taking the money from Ramirez.

6

Again, too, Paxton does not direct us to any contrary evidence. In presenting his motion for directed verdict to the trial court, Paxton contended there was no evidence the gun was a "functioning firearm" because officers had not fired the gun. On cross examination, the Texas Ranger acknowledged he had not fired the weapon, but stated it appeared to him to be functional and he did not see anything that would prevent it from functioning. The Chillicothe Chief of Police testified he examined the gun when a patrolman delivered it to him for safekeeping. He broke the weapon open and found it to be loaded with one round. He also acknowledged he had not fired it. That officers had not fired the gun is not evidence it would not fire. Examined in a neutral light, the evidence is not too weak to establish that Paxton used or exhibited a firearm. *Thomas*, 821 S.W.2d at 620. *See also Adame v. State*, 69 S.W.3d 581, 583 (Tex.Crim.App. 2002) (Meyers, J., concurring). We overrule points three and four.

## Points Five and Six - Right of Self-Representation

After the State's argument following the close of evidence in the guilt-innocence stage of the trial, as his appointed counsel began his argument, Paxton interrupted and asked to "address the court." The jury was removed, and Paxton advised the court that he was going to "fire" his attorney, stating also the attorney "has no say in this case from here on." The court disallowed Paxton's effort. Paxton persisted, asserting "by my constitutional right it's my choice" and "I have a right to fire my lawyer."[2]

---

[2]The record indicates that following a consultation, off the record, among Paxton, his counsel and his family, the trial continued to completion without a renewal of Paxton's effort at self-representation. At the hearing on Paxton's motion for new trial, held several weeks after trial, in response to the trial court's question, Paxton stated he was satisfied with his

On appeal Paxton argues the trial court's action denied his right to represent himself under the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment. The defendant in a criminal case has the constitutional rights to waive the assistance of counsel and to represent himself without counsel at trial. *See Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); *Johnson v. State*, 760 S.W.2d 277 (Tex.Crim.App. 1988). The right of self-representation must be asserted, though, clearly and unequivocally in a timely manner. "Timely" generally has been held to mean before the jury is impaneled. *See McDuff v. State*, 939 S.W.2d 607, 619 (Tex.Crim.App. 1997); *Ex parte Winton*, 837 S.W.2d 134, 135 (Tex.Crim.App. 1992); *Blankenship v. State*, 673 S.W.2d 578, 585 (Tex.Crim.App. 1984). *But see Johnson v. State*, 676 S.W.2d 416, 419-20 (Tex.Crim.App. 1984) (assertion of right timely after impaneling of jury but before any evidence presented to jury).[3] Paxton's assertion of the desire to represent himself, made

---

lawyer. A handwritten *pro se* notice of appeal Paxton submitted expressly asked that the same counsel represent him on appeal.

[3]At oral submission, Paxton's counsel made us aware of the memorandum opinion issued in *Wiseman v. State*, No. 04-03-00432-CR and No. 04-03-00433-CR, 2004 WL 2289613 (Tex.App.–San Antonio, October 13, 2004, pet. filed). The opinion, citing *Burgess v. State*, 816 S.W.2d 424, 428 (Tex.Crim.App.1991) and two other cases on the issue, discusses the options available to the trial court "when confronted with an accused who makes an eleventh hour request for change of counsel." Among those options, the court notes, if the accused makes an unequivocal assertion of the right of self-representation and persists after proper admonishment, "the court must allow the accused to represent himself." The Wiseman opinion does not suggest the trial court erred by denying Paxton's request. Neither the Wiseman opinion nor any of the three cases it cites on this issue concern the timeliness of the unequivocal assertion. Wiseman asked to dismiss his attorney on the day of trial, but before trial began. The "eleventh hour" reference is contained in earlier cases, *see, e.g., Burgess*, 816 S.W.2d at 428, and clearly is not intended to override the requirement that the assertion be made timely.

for the first time after the evidence was closed, was not timely and the trial court did not err in refusing it. Points five and six are overruled.

## Points Seven and Eight - Appearance in Jail Clothes

Paxton filed a pretrial motion asking the court to direct that he not be brought to the courtroom for trial wearing jail clothes. No one arranged for civilian clothing for him, though, and shortly after 8:00 on the first morning of trial, a sheriff's deputy escorted Paxton to the courthouse in his jail clothes. Before the jury panel was brought into the courtroom, the judge heard a defense motion for continuance and, after denying the motion, directed that Paxton be provided with civilian clothes.[4] The sheriff escorted Paxton to a room off the courtroom, from which he was taken back to the jail while the court met with the panel.

During the second day of trial, Paxton's counsel brought to the court's attention a motion for mistrial, prepared *pro se* by Paxton. The motion alleged Paxton walked past the potential jurors in his jail clothes when he was escorted initially to the courtroom the day before. The court filed the motion and held a hearing outside the presence of the jury. Testimony indicated the jury panel was summoned for 9:00 the morning of trial and that several cases were scheduled. Testimony was consistent that there were several people in the hallway outside the courtroom both when Paxton was brought into the courthouse and when he was escorted back to the jail to change clothes. There was conflicting

---

[4]While the record does not reflect the court took written action on Paxton's motion, the court made its practice regarding the dress of defendants clear, admonishing those present, "We don't ever try anybody in jail clothes, not ever, never, so that ought not to . . . happen again."

9

testimony concerning whether any of those present at either time were jurors. Paxton and his aunt both testified there were "a lot" of people in and around the hallway outside the courtroom, and Paxton said he saw many of the same faces later during voir dire. The law enforcement officers who testified remembered fewer persons being present when Paxton was brought in. The Texas Ranger testified he was present at that time and there were "six or seven" people, none of whom was on the jury. The officers who escorted Paxton from the courtroom area back to the jail testified there were then 15 to 20 people present. A constable who was acting as bailiff testified that he was collecting information sheets from prospective jurors when Paxton was taken from the courtroom, and there were not any prospective jurors then in the hallway.

The trial court denied the motion for mistrial, and Paxton argues on appeal that his due process rights under both the United States and Texas Constitutions were violated when he was brought before prospective jurors in jail clothes. He cites *Randle v. State*, 826 S.W.2d 943 (Tex.Crim.App. 1992) and *Ephraim v. State*, 471 S.W.2d 798 (Tex.Crim.App. 1971). Those cases establish that requiring a defendant, over his objection, to go to trial wearing jail clothes violates his rights to a fair trial and to be presumed innocent. *Randle*, 826 S.W.2d at 944-45. In those cases, however, there was no question the defendants were tried in jail clothes. Here, the trial court was not asked to make a finding on the fact question whether Paxton appeared before jury members in his jail clothes. Because the evidence heard by the trial court would support a conclusion that he did not appear before jurors in jail clothes, we view the evidence in the light most favorable to the trial court's ruling and assume that was the court's implicit finding of fact.

10

*See State v.* Ross, 32 S.W.3d 853, 858 (Tex.Crim.App. 2000)*; Quinn v. State,* 958 S.W.2d 395, 401-02 (Tex.Crim.App. 1997).   Such a conclusion requires that we overrule points seven and eight.

Having overruled Paxton's points of error, we affirm the judgment of the trial court.


James T. Campbell
Justice


Do not publish.