NO. 07-03-0041-CR


IN THE COURT OF APPEALS


FOR THE SEVENTH DISTRICT OF TEXAS


AT AMARILLO


PANEL D


JANUARY 31, 2005


_________________________________



CLARENCE DANIEL PAXTON, APPELLANT


V.


THE STATE OF TEXAS, APPELLEE



_________________________________


FROM THE 46TH DISTRICT COURT OF HARDEMAN COUNTY;


NO. 3782; HONORABLE TOM NEELY, JUDGE


_______________________________


Before QUINN, REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION

 Clarence Daniel Paxton was convicted by a jury of aggravated robbery over his plea
of not guilty and sentenced to 20 years confinement in the Institutional Division of the Texas
Department of Criminal Justice. He appeals the conviction and sentence. We will affirm
the trial court's judgment.

 Paxton presents eight points of error. By his points of error one and two, he
contends the required evidence of his intent was legally and factually insufficient. Through
points three and four, he makes the same contentions with respect to the evidence he used
a deadly weapon while committing theft. Points five and six present Paxton's arguments
he was wrongfully denied his right to represent himself granted by the Sixth Amendment
and the Due Process Clause of the Fourteenth Amendment to the United States
Constitution. By points seven and eight, Paxton contends he was wrongfully denied due
process of law when he was brought before prospective jurors in jail clothes.

 A Hardeman County grand jury indicted Paxton alleging that in that county on or
about July 23, 2002, Paxton did "while in the course of committing theft of property and with
intent to obtain or maintain control of said property, intentionally or knowingly threaten or
place Brett Ramirez in fear of imminent bodily injury or death, and the defendant did then
and there use or exhibit a deadly weapon, to-wit: a firearm."

 At trial Ramirez testified he was working alone on that date as cashier at a small
grocery store in Chillicothe, Texas, when a person he identified as Paxton entered and
walked about the store. He inquired of Ramirez about the store's supply of duct tape and
later asked to use the telephone. When Ramirez gave him the phone, Paxton pulled its
cord from the handset, (1) pointed a small pistol at Ramirez and said, "Give me your money." 
Ramirez removed cash from both the store's registers and gave it to Paxton. Ramirez
testified he was fearful during the encounter that Paxton might shoot him, causing him
death or injury. He followed Paxton's instructions to go to the back of the store and, after
he heard Paxton's vehicle leave, told two entering customers of the robbery and locked the
store.

 Evidence including the testimony of law enforcement officers established that a
Texas highway patrolman stopped Paxton's vehicle on U. S. Highway 287 outside Vernon
because the vehicle matched the description broadcast over police radio. Examining the
interior of the vehicle with Paxton's consent, the patrolman found a two-shot .22 caliber
Derringer, which was admitted into evidence and identified by Ramirez as the gun the
robber pointed at him. Paxton's vehicle also contained three boxes of .22 caliber
ammunition, and a sports bag in which officers found $903 in cash. While the patrolman's
attention was directed toward the vehicle's interior, Paxton left the scene on foot. A search
ensued and he was arrested when he later approached officers. He was seventeen at the
time.

 A written statement prepared by a Texas Ranger and signed by Paxton within hours
of his arrest also was among the evidence. In the statement Paxton admitted actions
consistent with Ramirez's version of the events. It states, in part, "I had my uncle's two
shot pistol . . . . I pulled the pistol out of my front right pants pocket. I told the guy can I
have your money please. I felt bad about it. He sat the money on the counter." 

 Paxton's case at the guilt-innocence phase of trial was developed only through cross
examination. He offered no testimony or other evidence.

 In reviewing the legal sufficiency of the evidence, we look at all the evidence in the
light most favorable to the verdict to determine whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); Griffin v.
State, 614 S.W.2d 155, 159 (Tex.Crim.App. 1981). The standard for legal sufficiency
review "gives full play" to the jury's responsibility "fairly to resolve conflicts in the testimony,
to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate
facts." Jackson, 443 U.S. at 319; Sanders v. State, 119 S.W.3d 818, 820 (Tex.Crim.App.
2003). In a review of the record for factual sufficiency, we consider all the evidence in a
neutral light, and will set aside the verdict if the evidence supporting it, either (1) standing
alone or (2) when weighed against the contrary evidence, is too weak to establish the
elements of the offense beyond a reasonable doubt. The analysis is to answer the single
ultimate question: considering all the evidence in a neutral light, was the jury rationally
justified in finding appellant guilty beyond a reasonable doubt? See Zuniga v. State, 144
S.W.3d 477, 481 (Tex.Cr.App. 2004); Goodman v. State, 66 S.W.3d 283, 285
(Tex.Crim.App. 2001). 

Points One and Two - Evidence of Intent 


 Under point of error one, Paxton argues the trial court erred by denying his motion
for directed verdict because there was no evidence he had any intent to obtain and
maintain control of the "said property" referred to in the indictment. The court's charge
instructed the jury, in accordance with Penal Code Section 29.02(a), that robbery requires
an "intent to obtain or maintain control of the property," and, in accordance with Penal Code
Section 6.03(a), that a person acts intentionally, or with intent, with respect to a result of
his conduct when it is his conscious objective or desire to cause the result. See Tex. Pen.
Code Ann. §§ 6.03(a), 29.02(a) (Vernon 2003). The court also instructed the jury that
"property" means a document, including money, that represents or embodies anything of
value. See Tex. Pen. Code Ann. § 29.01(2)(B). 

 The jury could infer Paxton's intent from his acts, words and conduct. See
Hernandez v. State, 819 S.W.2d 806, 810 (Tex.Crim.App. 1991), cert. denied 504 U.S.
974, 112 S Ct. 2944, 119 L. Ed. 2d 568 (1992). See also Manrique v. State, 994 S.W.2d
640, 649 (Tex.Crim.App. 1999) (Meyers, J., concurring) (intent almost always proven
through evidence of circumstances surrounding the crime). Ramirez's undisputed
testimony, corroborated by Paxton's own statement, that Paxton took money from Ramirez
at gunpoint, provides legally sufficient evidence that he acted with the intent to obtain or
maintain control of the money. If further evidence of his intent were needed, it is provided
by the evidence he placed the money in a bag in his vehicle and drove away with it. 

 Paxton argues in his second point that the evidence of his intent was factually
insufficient, but does not point us to evidence he contends demonstrates the absence of
the required intent. As noted, his written statement says he "felt bad" about his actions. 
It also states that as he left the store he "knew" Ramirez was going to call police, and that
as he drove down the highway at 55-60 mph, he "figured" he would get caught. None of
those statements weaken the inference that Paxton acted with the conscious objective of
obtaining or maintaining control of the money. The evidence of his intent to do so is
factually sufficient. Paxton's first and second points are overruled.

Points Three and Four - Evidence of Deadly Weapon


 Paxton's robbery of Ramirez was aggravated, the indictment alleged, because he
used or exhibited a deadly weapon, a firearm. Paxton contends the evidence of his use
or exhibition of a deadly weapon is legally and factually insufficient. 

 Penal Code Section 1.07(a)(17) includes a firearm within the definition of the term
deadly weapon. See Tex. Pen. Code Ann. § 1.07(a)(17)(A) (Vernon Supp. 2004); Thomas
v. State, 821 S.W.2d 616, 620 (Tex.Crim.App. 1991). Because an object meets the
definition of deadly weapon if it is a firearm, the State "must simply prove at trial that it was
a firearm in fact." Id. at 620. As noted, the gun was in evidence. During the testimony of
the Texas Ranger, he responded affirmatively to the district attorney's question whether he
would describe the gun as a firearm. He further testified that the Derringer would shoot a
.22 caliber bullet, and, responding to a question about the capability of a bullet shot from
the gun to cause death or serious bodily injury, stated that to his knowledge more people
are killed with .22s each year than any other caliber. 

 A person "uses or exhibits" a deadly weapon under Penal Code Section 29.03(a)(2)
if he employs the weapon in any manner that facilitates the associated felony. McCain v.
State, 22 S.W.3d 497, 502 (Tex.Crim.App. 2000). Again, Ramirez's undisputed testimony
that Paxton pointed the gun at him, corroborated by Paxton's own statement, provide ample
evidence from which a rational jury could have found Paxton used or exhibited a firearm
while taking the money from Ramirez. 

 Again, too, Paxton does not direct us to any contrary evidence. In presenting his
motion for directed verdict to the trial court, Paxton contended there was no evidence the
gun was a "functioning firearm" because officers had not fired the gun. On cross
examination, the Texas Ranger acknowledged he had not fired the weapon, but stated it
appeared to him to be functional and he did not see anything that would prevent it from
functioning. The Chillicothe Chief of Police testified he examined the gun when a
patrolman delivered it to him for safekeeping. He broke the weapon open and found it to
be loaded with one round. He also acknowledged he had not fired it. That officers had not
fired the gun is not evidence it would not fire. Examined in a neutral light, the evidence is
not too weak to establish that Paxton used or exhibited a firearm. Thomas, 821 S.W.2d
at 620. See also Adame v. State, 69 S.W.3d 581, 583 (Tex.Crim.App. 2002) (Meyers, J.,
concurring). We overrule points three and four.

Points Five and Six - Right of Self-Representation


 After the State's argument following the close of evidence in the guilt-innocence
stage of the trial, as his appointed counsel began his argument, Paxton interrupted and
asked to "address the court." The jury was removed, and Paxton advised the court that he
was going to "fire" his attorney, stating also the attorney "has no say in this case from here
on." The court disallowed Paxton's effort. Paxton persisted, asserting "by my constitutional
right it's my choice" and "I have a right to fire my lawyer." (2)

 On appeal Paxton argues the trial court's action denied his right to represent himself
under the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment. 
The defendant in a criminal case has the constitutional rights to waive the assistance of
counsel and to represent himself without counsel at trial. See Faretta v. California, 422
U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); Johnson v. State, 760 S.W.2d 277
(Tex.Crim.App. 1988). The right of self-representation must be asserted, though, clearly
and unequivocally in a timely manner. "Timely" generally has been held to mean before
the jury is impaneled. See McDuff v. State, 939 S.W.2d 607, 619 (Tex.Crim.App. 1997);
Ex parte Winton, 837 S.W.2d 134, 135 (Tex.Crim.App. 1992); Blankenship v. State, 673
S.W.2d 578, 585 (Tex.Crim.App. 1984). But see Johnson v. State, 676 S.W.2d 416, 419-20 (Tex.Crim.App. 1984) (assertion of right timely after impaneling of jury but before any
evidence presented to jury). (3) Paxton's assertion of the desire to represent himself, made
for the first time after the evidence was closed, was not timely and the trial court did not err
in refusing it. Points five and six are overruled.

Points Seven and Eight - Appearance in Jail Clothes


 Paxton filed a pretrial motion asking the court to direct that he not be brought to the
courtroom for trial wearing jail clothes. No one arranged for civilian clothing for him,
though, and shortly after 8:00 on the first morning of trial, a sheriff's deputy escorted Paxton
to the courthouse in his jail clothes. Before the jury panel was brought into the courtroom,
the judge heard a defense motion for continuance and, after denying the motion, directed
that Paxton be provided with civilian clothes. (4) The sheriff escorted Paxton to a room off the
courtroom, from which he was taken back to the jail while the court met with the panel. 

 During the second day of trial, Paxton's counsel brought to the court's attention a
motion for mistrial, prepared pro se by Paxton. The motion alleged Paxton walked past the
potential jurors in his jail clothes when he was escorted initially to the courtroom the day
before. The court filed the motion and held a hearing outside the presence of the jury. 
Testimony indicated the jury panel was summoned for 9:00 the morning of trial and that
several cases were scheduled. Testimony was consistent that there were several people
in the hallway outside the courtroom both when Paxton was brought into the courthouse
and when he was escorted back to the jail to change clothes. There was conflicting
testimony concerning whether any of those present at either time were jurors. Paxton and
his aunt both testified there were "a lot" of people in and around the hallway outside the
courtroom, and Paxton said he saw many of the same faces later during voir dire. The law
enforcement officers who testified remembered fewer persons being present when Paxton
was brought in. The Texas Ranger testified he was present at that time and there were "six
or seven" people, none of whom was on the jury. The officers who escorted Paxton from
the courtroom area back to the jail testified there were then 15 to 20 people present. A
constable who was acting as bailiff testified that he was collecting information sheets from
prospective jurors when Paxton was taken from the courtroom, and there were not any
prospective jurors then in the hallway. 

 The trial court denied the motion for mistrial, and Paxton argues on appeal that his
due process rights under both the United States and Texas Constitutions were violated
when he was brought before prospective jurors in jail clothes. He cites Randle v. State,
826 S.W.2d 943 (Tex.Crim.App. 1992) and Ephraim v. State, 471 S.W.2d 798
(Tex.Crim.App. 1971). Those cases establish that requiring a defendant, over his
objection, to go to trial wearing jail clothes violates his rights to a fair trial and to be
presumed innocent. Randle, 826 S.W.2d at 944-45. In those cases, however, there was
no question the defendants were tried in jail clothes. Here, the trial court was not asked
to make a finding on the fact question whether Paxton appeared before jury members in
his jail clothes. Because the evidence heard by the trial court would support a conclusion
that he did not appear before jurors in jail clothes, we view the evidence in the light most
favorable to the trial court's ruling and assume that was the court's implicit finding of fact. 
See State v. Ross, 32 S.W.3d 853, 858 (Tex.Crim.App. 2000); Quinn v. State, 958 S.W.2d
395, 401-02 (Tex.Crim.App. 1997). Such a conclusion requires that we overrule points
seven and eight.

 Having overruled Paxton's points of error, we affirm the judgment of the trial court.


 James T. Campbell

 Justice





Do not publish. 

 
1. The testimony uses the term "headset."
2. 
 ' 
 - ' 
 ' 
 
 
3. ' 
 --- --- 
 - 
 
 " 
 " 
 - 
 " 
" '
 
 
 " " 
 
 
4. ' 
 
 " '    
 "