**Opinion filed February 26, 2009**



In The

# Eleventh Court of Appeals

————

## No. 11-07-00233-CR

————

### FREDDIE ALCONTOR, Appellant

### V.

### STATE OF TEXAS, Appellee

**On Appeal from the 91st District Court**

**Eastland County, Texas**

**Trial Court Cause No. CR-21,135**

### M E M O R A N D U M   O P I N I O N

Freddie Alcontor appeals his conviction by the trial court of the offense of debit card abuse. The court sentenced him to two years in the Texas Department of Criminal Justice, State Jail Division. He contends in three issues that the trial court erred in failing to appoint new trial counsel to represent him after his court-appointed attorney withdrew from the case two days before trial, that the trial court erred by failing to properly admonish him about the risks of self-representation, and that the evidence is legally and factually insufficient to support his conviction. We affirm.

Alcontor contends in Issue Three that the evidence is legally and factually insufficient to support his conviction. In order to determine if the evidence is legally sufficient, the appellate court

reviews all of the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). To determine if the evidence is factually sufficient, the appellate court reviews all of the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006) (overruling in part *Zuniga v. State*, 144 S.W.3d 477 (Tex. Crim. App. 2004)); *Johnson v. State*, 23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Then, the reviewing court determines whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson*, 204 S.W.3d at 414-15; *Johnson*, 23 S.W.3d at 10-11.

Emiley Jane Roberson Crawford testified that on April 12, 2006, she had unintentionally left her debit card in an Eastland convenience store after purchasing some soft drinks. She indicated that, while she knew Louterrie Pittman, she had not given either her or Alcontor permission to use her debit card.

Deputy Sheriff Windell Earl Light testified that, one day after Eastland police had obtained statements from Louterrie Pittman and Alcontor, he had a confrontation with Alcontor in a grocery store parking lot. Deputy Light indicated that he told Alcontor that he was accused of using a debit card and that "it looked like he was definitely the one that used it." Deputy Light related that, when Alcontor asked what they had found out, he told him that they had found out he used the "credit" card. According to Deputy Light, Alcontor responded, "What are you going to do about it?" in a very threatening manner. He said that, when he told Alcontor that Eastland police would probably get a warrant issued for him and arrest him, Alcontor responded, "I would like to see them try to do so." When Deputy Light said that he would actually arrest Alcontor if a warrant was issued, Alcontor responded, "I'd like to see you try." Deputy Light indicated that he felt very threatened by Alcontor at that time. Deputy Light related that, after failing to appear in court in Eastland for arraignment, Alcontor was arrested in Breckenridge.

Dustin Deon Trader testified that he is a police officer for the City of Eastland. He identified Alcontor as an individual who, along with Louterrie, had approached the convenience store counter together after Crawford, the complainant, left. He related that Louterrie had indicated in a statement that Alcontor had motioned his eyes toward the card prior to Louterrie taking the card. Officer

Trader insisted that Pittman had told him that, after she had given a statement that did not implicate Alcontor, she had come back and made a second statement, charging that Alcontor and his nephews were making threats toward them and driving by their house. According to Officer Trader, Louterrie was fearful of harm from Alcontor. He indicated that Louterrie and Alcontor were coworkers who had arrived and left the convenience store together on the day the debit card was taken.

Officer Trader testified that the card was used by Louterrie the day after it was taken from the convenience store. He indicated that Louterrie used the card belonging to Crawford to fill up her vehicle and subsequently, after a conversation with Alcontor, used the card to fill up his vehicle as well. Officer Trader related that the transaction details of the fueling of the two vehicles and Crawford's bank transaction statement were a perfect match.

James Matthew Mull, employed by the Texas Department of Public Safety with the Criminal Intelligence Service, testified that, during a second interview, Alcontor became extremely aggressive and his general manner was threatening.

Louterrie testified that, before Alcontor was incarcerated, he had threatened to hurt or kill her husband. She indicated that he would follow them and come up and down their street. She related that Alcontor also threatened her husband at his place of employment. Louterrie acknowledged seeing Crawford's card on the counter and taking it. She said that she and Alcontor were together at the time and that, prior to her grabbing the card, he was shifting his eyes toward the card in a way that she interpreted as suggesting that she grab the card. She insisted that she believed he saw her grab the card because he was standing by her at the time. She related that, the next day after the card was taken, she and Alcontor were at the convenience store and that they discussed using the card to put gas in Alcontor's vehicle. She acknowledged that she swiped the card belonging to Crawford and that Alcontor placed gas in his vehicle. She testified that Alcontor knew she was using Crawford's card to pay for the gas. Louterrie admitted that neither she nor Alcontor had permission to use Crawford's card.

Victor Allen Pittman Jr. testified that Alcontor came up to him at his place of employment and asked why "she" was so stupid as to do all that. Victor indicated that, when he told Alcontor that he had found out that Alcontor apparently was involved more than he was saying, Alcontor told him that he "didn't want to f--k with him, and that if we tried to say that he f-----g did it, that he would take care of us."

3

Alcontor made a final statement in which he said that, at the time the gas was purchased, he never got out of his vehicle.

Alcontor's sole contention with respect to the sufficiency of the evidence is that the State relied upon the testimony of Louterrie, an accomplice, and that her testimony was not sufficiently corroborated. A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed, and the corroboration is not sufficient if it merely shows the commission of the offense. TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005). There must be some non-accomplice evidence, either direct or circumstantial, that tends to connect the accused to the commission of the offense alleged in the indictment. *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994); *Reed v. State*, 744 S.W.2d 112, 124-25 (Tex. Crim. App. 1988). We must eliminate from consideration the accomplice testimony and then examine the remaining testimony and evidence to determine whether the other inculpatory facts and circumstances tend to connect appellant with the commission of the offense. *Munoz v. State*, 853 S.W.2d 558, 559 (Tex. Crim. App. 1993). The non-accomplice testimony does not have to directly link appellant to the crime or alone establish guilt beyond a reasonable doubt. *Gill*, 873 S.W.2d at 48. As we have noted, the non-accomplice testimony showed that, after Crawford left her card on the counter at an Eastland convenience store, Louterrie and Alcontor were at the store together and together they approached the counter right after Crawford left. The non-accomplice testimony also shows that Louterrie and Alcontor returned to the convenience store the next day and that Louterrie used Crawford's card to purchase gas for herself and for Alcontor.

There is also evidence from non-accomplices that Alcontor spoke to more than one investigating officer in a very threatening manner and that he had approached Louterrie's husband at his place of employment and threatened him and his family if they tried to say he did it. In Texas, evidence that a witness has been threatened or that someone has attempted to coerce his or her testimony is admissible to show the accused's consciousness of guilt. *See Brown v. State*, 657 S.W.2d 117, 119 (Tex. Crim. App. [Panel Op.] 1983) (threats against witness's family); *Rodriguez v. State*, 577 S.W.2d 491, 492-93 (Tex. Crim. App. [Panel Op.] 1979) (threats against State's witness). Threats or other attempts at coercion are "hardly the actions of an innocent accused," and evidence of such is every bit as probative of guilt as would be flight by the accused. *Rodriguez*, 577 S.W.2d at 493.

4

Considering all of the testimony, we hold that the non-accomplice testimony does tend to connect Alcontor with the commission of the offense. Consequently, we hold that the evidence is legally and factually sufficient to support the conviction. While Alcontor mentions the threatening manner he displayed in his conversations with investigating officers, he does not make reference to it or to his threats directed at Louterrie's husband in his argument that the evidence is insufficient. Even if, as Alcontor suggests, evidence that Alcontor was at the convenience store the day after Louterrie took Crawford's card and that Louterrie purchased gas for Alcontor's vehicle with that card is insufficient to connect Alcontor with the commission of the offense, we hold that such evidence, when coupled with Alcontor's threatening attitude toward law enforcement officers and his threats directed at Louterrie's husband, is sufficient to connect him with the offense. We overrule Issue Three.

Alcontor urges in Issue Two that the trial court erred by failing to properly admonish him about the risks of self-representation, as required by *Faretta v. California,* 422 U.S. 806 (1975). A State may not constitutionally force a lawyer upon a defendant in a criminal case, even when he or she insists upon wanting to conduct the defense. *Faretta*, 422 U.S. at 807. Although a defendant need not himself or herself have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he or she should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 835.

Two days before trial, a hearing was held on a motion to withdraw filed by Alcontor's counsel. Alcontor indicated that he was in favor of the court's granting the motion. After noting that the trial was set in two days, the trial court asked Alcontor what his intentions were and whether he intended to represent himself. When Alcontor answered, "I would do it," the trial court asked him if he wished to do so, and Alcontor responded that he did.

The trial court told Alcontor that he was satisfied that his counsel could effectively and competently represent clients in these cases and that he had extensive training that would allow him to represent a defendant in a case such as this. The trial court asked Alcontor if he realized that, if he were to proceed without an attorney, he would not have that same type of training. Alcontor responded that he did. Alcontor also acknowledged that he realized that that would place him at a disadvantage but that he was willing to accept that in representing himself. The trial court repeated the quote about an individual who represents himself or herself having a fool for a client, to which

Alcontor responded, "You never know. We'll see." When asked by the trial court, Alcontor stated that he understood that it was not always the best decision to represent oneself. The court ascertained that Alcontor had a G.E.D. and that he had previously witnessed court proceedings and was familiar with what is ordinarily required in a court proceeding.

Alcontor testified that there was no physical or mental condition that would keep him from having a clear understanding of what he was doing, that he was not taking any medications that would have any effect on what he was doing, and that he was fully competent to proceed. He indicated he was aware that he faced a state jail felony and that he was looking at up to two years in a state jail facility. After the trial court discussed how the trial would proceed, Alcontor testified that he understood. Alcontor indicated that he was prepared to make appropriate objections to preserve a basis for an appeal. He repeated that he was requesting that he be allowed to represent himself, that he did not feel pressured to do so, and that no one had forced or coerced him in any way to make that request. He stated that he was not under any duress, coercion, or any hope of lighter punishment for any sentence. We find that the trial court adequately made Alcontor aware of the dangers and disadvantages of self-representation and that the record establishes that Alcontor knowingly, intelligently, and voluntarily decided to forgo his right to counsel and assert his right to represent himself.

Alcontor suggests that the trial court's admonishments were inadequate because there was no discussion about the nature of the crime and the State's burden of proof or the complexities of accomplice witness testimony and party liability. As we have previously noted, the Court in *Faretta* requires the trial court to make the defendant aware of the dangers and disadvantages of self-representation so that the record will establish that "he knows what he is doing and his choice is made with eyes open." The record shows the trial court made Alcontor aware of the dangers and disadvantages of self-representation and establishes that Alcontor knew what he was doing and that his choice was made "with eyes open."

The omissions of which Alcontor complains are not referred to in *Faretta*. Alcontor relies upon a quotation from the case of *Von Moltke v. Gillies*, 332 U.S. 708, 723-24 (1948), a quotation contained in the court's opinion in *Blankenship v. State*, 673 S.W.2d 578, 583 (Tex. Crim. App. 1984). The court stated:

> A judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his

6

right to counsel and desires to waive this right, does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments, thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which a plea is tendered.

*Blankenship*, 673 S.W.2d at 583 (quoting *Von Moltke*, 332 U.S. at 723-24).

Blankenship involved a case in which the court held that the trial court erred by not allowing Blankenship to represent himself. *Blankenship*, 673 S.W.2d at 585. There was no issue in *Blankenship* as to what must be contained in an admonishment the trial court must make before allowing a defendant to represent himself or herself. Consequently, we consider the reference in *Blankenship* to the requirements set forth in *Von Moltke* as dicta.

*Von Moltke* is a 1948 case involving an unrepresented defendant of German descent who had pleaded guilty to charges of espionage. *Von Moltke*, 332 U.S. at 709-10. Von Moltke never asserted a right to represent herself. The admonishments referred to in the opinion are those required when an unrepresented defendant is pleading guilty without the benefit of counsel. *Id.*

*Faretta* is a 1975 case dealing with the admonishment required in a case such as the one at bar where the defendant has asserted a right to represent himself. We have examined *Faretta* and found no requirement with respect to the admonishment that Alcontor complains was omitted by the trial court. We conclude that the trial court's admonishment in this case was sufficient because it complied with the requirements of *Faretta*. We overrule Issue Two.

Alcontor contends in Issue One that the trial court erred in failing to appoint new trial counsel after his counsel withdrew two days before his trial. Inasmuch as Alcontor had knowingly, intelligently, and voluntarily chosen to represent himself, the trial court would have violated his right to do so by appointing new counsel. Alcontor urges that he did not knowingly, intelligently, and voluntarily choose to represent himself because the court did not appear to offer any other alternative than self-representation, so that he "ostensibly had no other choice, and no other choice was presented to him."

During the colloquy between Alcontor and the trial court at the hearing on the motion to withdraw, the trial court admonished Alcontor that it still found that he would qualify for a court-appointed attorney. At the conclusion of the discussion, the trial court asked Alcontor if he understood that the court had previously found him to be indigent and stated that, if he wished to change his election, he could not repeat any proceedings because the court had previously determined that he could receive the assistance of counsel. Alcontor testified that he understood that. We overrule Issue One.

The judgment is affirmed.

PER CURIAM

February 26, 2009

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Strange, J., and Hill, J.[1]

---

[1]John G. Hill, Former Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.

8