**Affirmed and Opinion Filed May 30, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-01575-CR

**JASON LATROY LEONARD, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 401st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 401-82469-2011**

## MEMORANDUM OPINION

Before Justices Bridges, Francis, and Lang-Miers
Opinion by Justice Bridges

Appellant Jason Latroy Leonard appeals from his conviction for aggravated sexual

assault, enhanced by a prior sexual assault conviction, and accompanying sentence of life in

prison. In two issues, appellant contends the trial court (1) erred by denying appellant's request

for self-representation and (2) abused its discretion when it overruled appellant's motion to

suppress evidence. We affirm.

### Background

Avery Dole[1] and appellant were introduced by a mutual acquaintance called "Kelly."

Dole bought cocaine from Kelly at a bar. Dole later called Kelly to bring her more cocaine. He

---

[1] Avery Dole is the pseudonym chosen by the complainant.

did so and introduced Dole to appellant, who indicated he could supply Dole with cocaine in the future.

On July 13, 2011, Dole asked appellant to bring her $100 worth of cocaine to her home. Appellant arrived sometime after 11:00 p.m. After providing appellant the $100, appellant and Dole snorted cocaine from her kitchen counter. Appellant surreptitiously videotaped her sniffing the cocaine with his cell phone. Appellant and Dole talked on her back porch and, around 1:00 a.m., Dole gave appellant her debit card to buy her cigarettes. When appellant returned, they both sniffed more cocaine, and appellant suggested they have sex. Dole refused. Appellant then played the video of her sniffing cocaine and another recording of her talking about her husband on the back porch. Appellant threatened to show her husband the videos if she did not have sex with him, and Dole refused. Appellant then went to the restroom.

Dole testified that, when he came out of the restroom, appellant punched her in the head and dragged her by the hair into the kitchen. Dole stated appellant put her in a chokehold and said, "I'm gonna leave after I get what I want and you're what I want." He put one of Dole's kitchen knives to her throat and led her to the living room, where he made her perform oral sex. Dole testified that appellant then pushed Dole down and the couch and raped her vaginally. After appellant ejaculated, he said he "wasn't stupid," so she would have to take a shower before he would leave. As she came out of the shower, he videotaped her and took a still photo of her. Dole's five-year-old son had gotten up and expressed concern for his mother. Dole testified appellant held the knife to the back of the child's neck while his back was turned. Dole reassured her son and coaxed him into the living room to watch cartoons.

Appellant then pulled Dole into the half bathroom and closed the door. Dole testified appellant forced her up onto the pedestal sink. Appellant then penetrated her vagina again, while covering her face and making a video recording with his cell phone. After appellant ejaculated,

Dole ran out of the bathroom with the knife and placed it on the kitchen counter. Appellant then dressed and sat in the living room with Dole and her two sons. Once appellant was informed a home appraiser was arriving soon, he left.

Dole then called a friend, who drove her to an E-Care facility. The police arrived, and she reported she had been sexually assaulted. Detective Randy Norton was one of the officers who responded to the call from the E-Care facility. Norton explained he observed Dole's black eye, which was starting to swell, and some scratches on her back. Based on her injuries, Norton had her transported to the hospital to have a rape kit examination. Dole testified she told the police about the videos on appellant's phone and identified appellant in a photo lineup. Based upon the information and identification of appellant in the photo lineup, police executed an arrest warrant for appellant.

Sergeant Heath Peacock with the Texas Department of Public Safety was one of the officers assigned to execute the warrant. Peacock explained that, while conducting surveillance at appellant's home, appellant exited his residence and was in the front yard speaking on a cell phone. Because the officers were concerned appellant might flee in his nearby car, Peacock blocked appellant's vehicle from exiting the driveway with his own car. Peacock's lights were flashing red and blue. At that point, appellant fled on foot. One of the officers then kicked in the locked front door of appellant's home, and Peacock saw appellant exiting the rear of the house through a sliding glass door. Peacock pursued appellant, who jumped over a fence. Peacock then lost sight of appellant, but presumed appellant had re-entered his home through an open garage. Peacock then began searching the rooms of appellant's home and announced "police" in an attempt to make a safe recovery of appellant. Appellant walked out of a closet with his hands up. Appellant's cell phone was on the dresser immediately accessible from the closet, and the police seized it as evidence. Norton testified that, after appellant was Mirandized, appellant

insisted he watch the video of appellant and Dole snorting cocaine. Norton then obtained a search warrant for the contents of the phone, including the videos and pictures. Appellant later moved to suppress all physical evidence including appellant's cell phone and its contents, but the trial court denied the motion.

Appellant's first trial ended in a hung jury. Although the trial judge had admonished appellant to not make outbursts, during his second trial, appellant spoke out while the jury was in the courtroom. As the State was offering a knife, appellant said, "That's not the same knife, Your Honor, y'all had the last time." Also, after appellant's attorney had cross-examined Dole and passed the witness, appellant raised his hand and addressed the judge, stating, "Under Faretta versus California I want to go pro se, Your Honor." The trial court admonished appellant to say nothing further. The State then finished its redirect and, in a hearing outside the presence of the jury, the trial court instructed appellant he would not be allowed to question Dole further.

After Dole's examination, three State witnesses remained. In a hearing outside the presence of the jury, appellant told the court he wanted to question the defense witnesses and give his own closing argument. The trial court asked appellant questions to ascertain his education and familiarity with the rules of evidence and his competence to represent himself, but the record reflects appellant frequently evaded the judge's questions or refused to answer his questions. Ultimately, appellant gave up, making statements, such as, "I don't have a chance with this" and "I give up, man." When the trial court started explaining the dangers and disadvantages of self-representation, appellant made statements, such as, "Let's go home, man. . . . Forget it." Ultimately, the trial judge indicated that, if appellant was not going to answer the court's questions, he could not "make an appropriate determination as to whether or not to let [appellant] represent [him]self" or whether appellant "fully [understood] the dangers and

disadvantages of self-representation." Because the court could not make the determination due to appellant's "lack of cooperation," his request to represent himself was denied.

The jury found appellant guilty and, after finding the allegation of a prior conviction true,[2] the trial court assessed appellant's punishment at life in prison.

**Analysis**

*Self-Representation*

In his first issue, appellant contends the trial court erred by denying appellant's request for self-representation. Federal and state law guarantee a criminal defendant the right to the assistance of counsel as well as the right to waive counsel and represent himself. *See* U.S. CONST. amend. VI & XIV; TEX. CONST. art. I, §10; TEX. CODE CRIM. PROC. ANN. art. 1.05 (West 2005) (accused "shall have right of being heard by himself, counsel, or both"); *Faretta v. California,* 422 U.S. 806, 818–820 (1975); *Hatten v. State,* 71 S.W.3d 332, 333 (Tex. Crim. App. 2002). A defendant's right to counsel, however, may not be manipulated to obstruct the judicial process, and it does not require the trial court to appoint counsel agreeable to the defendant. *See Thomas v. State,* 550 S.W.2d 64, 68 (Tex. Crim. App. 1977); *Maes v. State*, 275 S.W.3d 68, 71 (Tex. App.−San Antonio 2008, no pet.).

In *Faretta,* the U.S. Supreme Court established the independent right of self-representation, in addition to the previously recognized right to waive the assistance of counsel. *Faretta,* 422 U.S. 806. A defendant may choose to proceed pro se by exercising his right of self-representation. *See, e.g.,* TEX. CONST. art. 1, § 10 ("[an accused] shall have the right of being heard by himself"); *Faretta,* 422 U.S. at 818–820 (1975); *Moore v. State,* 999 S.W.2d 385, 396 (Tex. Crim. App. 1999). When the right of self-representation was established in *Faretta,* the Supreme Court stated that "[a]lthough a defendant need not himself have the skill and experience

---

[2] Appellant was previously convicted of sexual assault of a child in 2001.

of a lawyer in order to competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation. . . ." *Faretta,* 422 U.S. at 835; *see also Blankenship v. State,* 673 S.W.2d 578, 583 (Tex. Crim. App. 1984). While it is well settled that a defendant in a criminal case has the right to represent himself without the assistance of counsel, in order for the right of self-representation to be adequately asserted, the right must be asserted in a timely manner, namely, before the jury is impaneled. *See Faulk v. State*, No. 01-09-00116-CR; 2011 WL 2089644, at *3 (Tex. App.−Houston [1st Dist.] May 19, 2011, pet ref'd) (citing *McDuff v. State*, 939 S.W.2d 607, 619 (Tex. Crim. App. 1997); *Ex Parte Winton*, 837 S.W.2d 134, 135 (Tex. Crim. App. 1992)).

Here, the record reflects appellant did not assert his right to self-representation until mid-way through the examination of Dole (the State's ninth witness). Appellant contends he expressed his dissatisfaction with appointed counsel prior to trial. However, expressing dissatisfaction with appointed counsel is not the same as an unequivocal request for self-representation. *See Faretta*, 422 U.S. at 835. We conclude appellant's request for self-representation, which was made after the jury was impaneled, was untimely. *See Faulk*, 2011 WL 2089644, at *3. We overrule appellant's first issue.

***Motion to Suppress***

In his second issue, appellant complains the trial court abused its discretion when it overruled appellant's motion to suppress evidence. Specifically, appellant argues the seizure and subsequent search of his cell phone were unlawful. However, before we can address the merits of the search and seizure, we must first determine whether appellant preserved error.

An adverse ruling on a pretrial motion to suppress evidence will ordinarily suffice to preserve error on appeal, and a defendant need not specifically object to the evidence when it is later offered at trial. *See Thomas v. State*, 408 S.W.3d 877, 881 (Tex. Crim. App. 2013). But he

must also take care not to affirmatively indicate he has "no objection" to the evidence that he challenged in his pretrial motion to suppress when it is later offered at trial, for the court of criminal appeals has held such an affirmative statement constitutes "waiver" of the right to raise on appeal the error that was previously preserved. *See id.*; *Estrada v. State*, 313 S.W.3d 274, 302 (Tex. Crim. App. 2010); *Swain v. State*, 181 S.W.3d 359, 367-68 (Tex. Crim. App. 2005)).

The court of criminal appeals has recently provided additional guidance on this issue, indicating that the rule that a later statement of "no objection" will forfeit earlier-preserved error is context-dependent, and we must consider it in the context of the entirety of the record. *See id.* at 885. If the record as a whole plainly demonstrates that the defendant did not intend, nor did the trial court construe, his "no objection" statement to constitute an abandonment of a claim of error that he had earlier preserved for appeal, the appellate court should not regard the claim as "waived," but should resolve it on the merits. *See id.* On the other hand, if from the record as a whole the appellate court simply cannot tell whether an abandonment was intended or understood, then, consistent with prior case law, it should regard the "no objection" statement to be a waiver of the earlier-preserved error. *See id.* Under the latter circumstances, the affirmative "no objection" statement will, by itself, serve as an unequivocal indication that a waiver was both intended and understood. *See id.* at 885-86.

Therefore, we turn to the context of the record before us. In his motion to suppress, appellant sought to suppress "all physical evidence including, but not limited to, [appellant's] cellular phone" and "[a]ll photographs, digital still images and videotaped images taken of the physical evidence and the places or persons searched by law enforcement officers." Appellant's motion to suppress was denied by the trial court. Prior to appellant's arraignment at the second trial, the trial judge made the following relevant remarks:

> Well, I've already ruled on the pre-trial hearing. We're not gonna have another
> pre-trial hearing, another Motion to Suppress. Those rulings are all the same.

Those rulings still stand. We don't need to reinvent the wheel just because the last jury hung up.

…

I assume [defense counsel] will, at the appropriate time, the last -- like he did in the last trial, you know, if he makes some vague, nebulous objection to the effect of, you know, Your Honor, I renew my previous objections, or the objections that I have previously made, I will understand that, and I understand that to include my rulings on the Motion to Suppress, so he's not waiving anything. And he doesn't need to go into great detail in front of the jury that would have the potential prejudicial effect for Mr. Leonard. If he makes some general reference, I will understand what that is. I've talked with the Court of Appeals now, so they should understand that that's the understanding the trial court has with the lawyers, so nothing is waived.

When the State offered the phone that had been the subject of the motion to suppress, defense counsel "reurge[d] [his] previous objections regarding seizure of the phone," which was sufficient to preserve error. However, when the State later offered several images and videos derived from the phone at issue, including the video of the alleged sexual assault in the bathroom, appellant affirmatively stated, "no objection." The State has referred us to the record, in which 14 images or videos from the phone at issue were offered as exhibits, and defense counsel stated there was "no objection." Specifically, the State refers this Court to five separate instances in which it offered images or video from appellant's cell phone and appellant stated, "no objection."[3] Our review of the record also shows that the remaining photo evidence from the cell phone, offered on two separate occasions (Exhibits 50, 51, 52 and 53 and then Exhibits 26 and 27) were also offered with appellant's response of "no objection." In light of the trial judge's comments and our review of the record as a whole, we cannot determine whether an abandonment was intended or understood. *See Thomas*, 408 S.W.3d at 885. Thus, under these

---

[3] The State refers us to multiple offers of exhibits in which the appellant responded, "no objection." For example, the State offered Exhibits 54, 55, and 56 (a photograph and 2 videos) at one time. The State later offered Exhibits 57 and 58 (a photograph and a video). The State then offered Exhibits 59, 60, and 61 (2 photographs and the CD containing video files from the cell phone) together. The State then offered Exhibit 28 (a photograph). Next, the State offered Exhibit 29 (a photograph). Finally, the State offered Exhibits 30, 31, 32 and 33 (4 photographs) together. Each offer is followed by a statement of "no objection" by appellant.

circumstances, the court of criminal appeals has instructed that the affirmative "no objection" statements serve as an unequivocal indication that a waiver of the earlier-preserved error was both intended and understood. *See id.* at 885-86. We overrule appellant's second issue.

## Conclusion

Having overruled appellant's two issues, we affirm the judgment of the trial court.

Do Not Publish
TEX. R. APP. P. 47
121575F.U05

 /David L. Bridges/
DAVID L. BRIDGES
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JASON LATROY LEONARD, Appellant

No. 05-12-01575-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 401st Judicial District Court, Collin County, Texas
Trial Court Cause No. 401-82469-2011.
Opinion delivered by Justice Bridges.
Justices Francis and Lang-Miers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered May 30, 2014

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE