

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0590-21

### NOEL CHRISTOPHER HUGGINS, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE TENTH COURT OF APPEALS
### HILL COUNTY

KEEL, J., delivered the opinion of the Court in which KELLER, P.J., and RICHARDSON, NEWELL, WALKER, SLAUGHTER, and MCCLURE, JJ., joined. YEARY, J., filed a dissenting opinion. HERVEY, J., concurred.

### O P I N I O N

While representing himself, Appellant pled guilty to possession of methamphetamine and was sentenced by the trial court to 18 years in prison. We granted review to decide whether his right to counsel was violated. We hold that it was not.

## I.  Overview

Appellant's state-jail, possession charge was enhanced with two prior felonies. Appellant doubted the validity of the enhancement allegations, and that doubt helped fuel his on-again/off-again self-representation. He represented himself at the beginning and the end of his case, but he was otherwise represented by two attorneys appointed in succession during most of the approximately 22 months that his case was pending in the trial court. After his trial date was reached during his second period of self-representation and while a venire was standing by, he announced that he would plead guilty and asked for representation again, but the trial court refused to appoint a third attorney.

On appeal, Appellant argued that his two waivers of counsel were not made knowingly and intelligently because the trial court did not admonish him about the dangers and disadvantages of self-representation, and the trial court denied him his statutory right to withdraw his waiver of the right to counsel under Code of Criminal Procedure Article 1.051(h). *Huggins v. State*, 627 S.W.3d 549, 551 (Tex. App.—Waco 2021). The court of appeals said the trial court was not required to admonish Appellant of the dangers and disadvantages of self-representation because he did not contest his guilt. *Id*. at 552. The court then looked at whether Appellant's waiver of counsel was intelligent, knowing, and voluntary. *Id*. at 553. Based on the totality of the circumstances, the court of appeals concluded that it was. *Id*. at 554.

Addressing Appellant's request to withdraw his waiver of counsel on the cusp of trial, the court of appeals said there were limits to a defendant's right to withdraw his

waiver of counsel.   *Id*. at 554-55 (citing *Medley v. State*, 47 S.W.3d 17 (Tex. App.—

Amarillo 2000)).   The court of appeals followed *Medley*, which determined that a

defendant seeking to withdraw an earlier counsel waiver must meet the same

requirements as a defendant who seeks to withdraw a jury waiver.   *Medley*, 47 S.W.3d at

24.   *Medley* said the defendant has the burden to show that withdrawing the waiver will

not: (1) interfere with the orderly administration of the business of the court, (2) result in

unnecessary delay or inconvenience to witnesses, or (3) prejudice the State.   *Id*. (citing

*Marquez v. State*, 921 S.W.2d 217, 223 (Tex. Crim. App. 1996)).

The court of appeals considered the circumstances surrounding Appellant's

waivers of counsel and concluded that the trial court's denial of the second withdrawal of

the counsel waiver was not outside the zone of reasonable disagreement.   *Huggins*, 627

S.W.3d at 556.   Appellant did not have the right to repeatedly alternate his position on

the right to counsel and to delay trial, and he did not meet his burden of showing that the

withdrawal would not interfere with the orderly administration of court business, result in

unnecessary delay or inconvenience, or prejudice the State.   *Id.*

We granted review to decide what admonishments were required and whether the

statutory right to withdraw a waiver of counsel is absolute.   We conclude that additional

admonishments about the dangers and disadvantages of self-representation were

unnecessary because Appellant was aware of those dangers and disadvantages.   We also

hold that the statutory right to withdraw a waiver of counsel "at any time" is temporal and

not absolute. *See* Tex. Code Crim. P. art. 1.051(h). Consequently, we affirm the judgment of the court of appeals.

## II. Admonishments Depend on the Circumstances

A defendant need not have lawyerly skill or experience to competently and intelligently choose to represent himself, but he should be made aware of the dangers and disadvantages of self-representation. *Faretta v. California*, 422 U.S. 806, 835 (1975). The admonishments required for self-representation depend on the circumstances, "including the defendant's education or sophistication" and the complexity or simplicity of the charge. *Iowa v. Tovar*, 541 U.S. 77, 88 (2004). They also depend on the stage of the proceedings and the assistance counsel can provide at that stage. *Patterson v. Illinois*, 487 U.S. 285, 298 (1988). There is no formula or script that must be read to a defendant who asserts his right to self-representation. *Tovar*, 541 U.S. at 88; *see also Blankenship v. State*, 673 S.W.2d 578, 583 (Tex. Crim. App. 1984). But judges must take an active role in assessing whether the defendant knowingly exercises that right. *Blankenship*, 673 S.W.2d at 583.

In analyzing a defendant's assertion of his right to self-representation, the focus is not solely on whether the right to counsel was waived but also on whether the defendant was aware of the dangers and disadvantages of self-representation. *Goffney v. State*, 843 S.W.2d 583, 585 (Tex. Crim. App. 1992). The trial judge should ensure that a defendant's choice to represent himself at trial is an informed one made with eyes open. *Faretta*, 422 U.S. at 835. When Faretta wanted to represent himself at a jury trial, it was

sufficient to warn him that it was a mistake not to accept the assistance of counsel and that he would be required to follow all the rules of trial procedure. *Id*. at 835-36. When Tovar waived counsel and pled guilty at his arraignment, it was sufficient to warn him of the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of potential punishment. *Tovar*, 541 U.S. at 81.

Under Article 1.051, a defendant may waive the right to counsel in writing. Tex. Code Crim. P. art. 1.051(f). The trial court must advise him of the nature of the charges against him, his right to counsel, his right to appointed counsel, and, if he is proceeding to trial, the dangers and disadvantages of self-representation. *Id.* at 1.051(g). If the court finds the waiver to have been made voluntarily and intelligently, then it shall provide him with a statement memorializing the waiver. *Id.*

Article 1.051 specifies no script for the trial court to use in assessing the voluntariness of the waiver of counsel. Rather, that assessment depends on the defendant's voluntary, knowing, and intelligent choice to represent himself. *See, e.g.*, Tex. Code Crim. Proc. art. 1.051(f) ("A defendant may voluntarily and intelligently waive in writing the right to counsel."). But because defendants often vacillate about how to plead and whether to pursue self-representation, the required admonishments can be a moving target, as this case illustrates.

## III. The Circumstances Here

Appellant's indictment for state-jail-felony possession of methamphetamine was enhanced with two prior felony convictions; if they were found true, he would face a

punishment range of two-to-twenty years in prison. One enhancement was for a rape conviction in Utah, and the other enhancement was for failure-to-register-as-a-sex-offender ("FTR"). The FTR was predicated on the Utah rape.

As detailed below, Appellant asserted and was granted his right to self-representation twice; first at arraignment and second at a pretrial hearing held about four weeks before his trial date. In between those two milestones, he was represented for a cumulative total of about 21 months by two attorneys appointed and withdrawn in succession.

April 5, 2017

At his April 5, 2017, arraignment, Appellant was on bond. After the trial court explained that it had raised Appellant's bond because of the enhancement paragraphs, Appellant questioned the use of an out-of-state conviction for enhancement and elected to "go *pro se.*"

> THE DEFENDANT: I thought the enhancements only -- in the state of Texas was only charges in the state of -- the state of Texas.

> THE COURT: No. No, it's anywhere else. So either way, this is a case that's now punishable as a second-degree felony, I think.

> THE STATE: It is, Your Honor.

> THE COURT: So it's -- 2 to 20 is the potential.

> THE DEFENDANT: Why does it jump two levels?

> THE COURT: Because of the two prior convictions.

THE DEFENDANT: So it goes from a state jail past the third degree to a second degree?

THE COURT: Yes, sir, if the State can prove those cases -- or those convictions. So as far as a lawyer, are you going to apply –

THE DEFENDANT: I'm going to go pro se.

THE COURT: Okay. Let me get a form and fill that out, and I'll visit with you at the end of the docket then.

THE DEFENDANT: Can I go ahead and file a motion for the discovery, too, so I can have it.

THE COURT: Once – yes, sir. You can file that any time you –

THE DEFENDANT: Yeah, I want to file it orally so I can get that within – whatever it is, seven, ten days.

The trial court later called Appellant back to the bench to review the "high points" of the written waiver of counsel. Those included his rights to (a) representation, (b) appointed counsel, (c) a reasonable opportunity to hire an attorney, (d) self-representation, and (e) withdrawal of waiver of counsel. The trial court elaborated on the right to withdraw a waiver of counsel. "You can always go back and still seek either court-appointed counsel or to hire counsel. This document is, like I said, binding on you and the State only as long as you have not withdrawn it or as long as you have not requested counsel, appointed or retained."

The court also explained that the prosecutor could "not communicate with you at all" before the waiver was signed. "That's why they don't talk to you." The court told Appellant to read the waiver, decide whether to sign it, and return it via the bailiff.

The waiver said that Appellant had been advised of the right to appointed counsel, the right to represent himself in a criminal proceeding, "and the dangers and disadvantages of self-representation." On the form, Appellant further acknowledged "that I have been fully advised of the right to counsel for purposes of entering a guilty plea or proceeding to trial, and the Court has advised me of the nature of the charges against me and, if I desire to proceed to trial, the dangers and disadvantages of self-representation."

After Appellant returned the signed waiver to the court, the trial court approved it and said it would "let you all visit. And if you reach any resolution, let me know." No agreement was reached, however, and the court asked Appellant if he was going to continue to represent himself. Appellant answered yes and continued:

> [The prosecutor] explained to me that they would allow me to look at the discovery here, make copies of it, and if I have a video player, I can bring it here and watch it. So this case is very extensive. It is 2 to 20. I think it warrants me to have disclosure in my person so I can be able to obtain it, go to the law library, and represent myself in a fair manner. Just like if an attorney was representing me, he would have the copy, too. I have a copy of the disclosure from my last case in my own possession, so it does happen. I do know that.

The prosecutor offered a clarification about watching the video—Appellant did not need his own computer—and asked for return of copies of any documents discovered in a previous case because attorneys "are not supposed to provide copies to the clients." Appellant said a prosecutor—not a defense attorney—had given him "the DVD and everything." Appellant asked about making an appointment for discovery, and the

prosecutor offered to show him the video, lab report, and offense report in court right then. "We can provide complete discovery to him to review right now." Appellant responded, "So that's on the record that I was denied the discovery? … I mean in my possession so I can represent myself like a real attorney." But the court said formal discovery would be addressed on May 3.

May 3, 2017

At the next hearing, Appellant said he still wished to represent himself and orally moved for a speedy trial. The trial court asked if he had filed any pretrial motions and Appellant said, "I'm still trying to figure it out, man. I need – I'm trying to figure out how to file about the indictment for the enhancement phase. I only have one charge in the state of Texas. They're using other charges from other states, which I don't think is correct." The trial court told Appellant that was permitted under Texas law.

The trial court again informed Appellant of the 2-to-20-year punishment range and observed, "So it's a fairly serious matter. It doesn't matter to me if you want to represent yourself, but I don't advise it." Appellant replied, "I don't advise it either, but I haven't – I ain't got the money to hire a real attorney, and I have had numerous shady dealings with the public defender's office and this county." The trial court told Appellant that the court appoints the same attorneys whom people hire and that he could apply for court-appointed counsel, hire counsel, or represent himself.

June 21, 2017

Appellant made his first request for counsel at the next pretrial hearing on June 21, 2017. He explained that he had recently "gotten clean," was going to college full time, and was trying to get his life in order. He told the court that he was going to "go through the proper stages and try to handle this appropriately and more efficiently." The court appointed him a lawyer. But Appellant soon thereafter sent a letter informing the court that he had fired his attorney and wished to return to represent himself. His first attorney's motion to withdraw was granted in April 2018, and his second attorney was appointed at the same time.

January 16, 2019

The next pretrial hearing began with the question of whether Appellant wanted the second appointed attorney to continue to represent him or wanted to proceed *pro se*. The question was prompted by two things: Appellant's *pro se* motion filed in December 2018 seeking a reduction of the FTR conviction to a state jail felony and a disagreement between Appellant and his attorney about enhancement law. Appellant explained that he had represented himself in the 2014 FTR case and had pled guilty to the third-degree offense, but he believed the FTR should have been a state jail felony and thus unavailable to enhance his possession charge. He said he "needed a legal understanding" because he "went *pro se*" in the FTR case. The judgment confirms that he represented himself in the FTR case.

The trial court tried to explain the enhancement law and procedure to Appellant and asked him again if he wanted to represent himself. Appellant responded, "No. I

mean, you – you don't say that a fool represents himself." The judge replied, "I'm not going to represent myself when I get in trouble." Appellant did not want to fire his appointed counsel. "I have never said I wanted Mr. Hill fired." But soon he would say so.

The prosecutor and the defense attorney then argued the merits of Appellant's motion, and after Appellant intervened, the judge explained that he could not go back and undo his third-degree felony FTR conviction because "that ship sailed 30 days after you pled on it and didn't appeal it." Eventually, the judge told Appellant that he was not entitled to a hybrid defense, and he would listen to only one person, and that person was not Appellant, prompting Appellant to say he would fire his attorney. The judge did not respond to that but instead listened to the attorney argue Appellant's motion.

February 7, 2019

On February 7, 2019, defense counsel presented a motion to withdraw because Appellant wanted to represent himself. Appellant confirmed that was the case. The trial court replied, "All right. You understand that, just as we've done here, the Court appointed you a lawyer and found that you were indigent, and that just as the Court will appoint you a lawyer, the Court will let you represent yourself, as long as that's the decision that you are making, so we will proceed with getting a . . . written Waiver of Counsel and get it to you in just a minute."

Before the waiver was presented to him, Appellant asked about the next setting. "Are we going to continue this to March 7th?" The prosecutor started to say the case

was set for trial in March, but Appellant wanted a continuance. "I don't want to sign for trial yet because I want to be able to file some motions with the Court." The trial court said there was plenty of time for motions, but Appellant explained, "Well, I'm not an attorney, so it's going to take me a minute." The trial court started to say that "the first thing we've got to do[,]" but Appellant asked whether his "writ of certiori [sic] had been granted." He elaborated, "I sent a writ of habeus [sic] corpus in last week to Angelia Orr, the clerk of the Court." The judge said he would check the file.

The prosecutor announced the case was set for trial on March 11, and Appellant said he would not be ready because he was "going to file an appeal to the motions to the appellate court." The trial court then presented him with the waiver of counsel. Although he said he had read it before, the record indicates that he read it again, and then the trial court said he could proceed on his own.

March 1, 2019

On March 1, 2019, the parties discussed the State's motion to amend the indictment to correct the offense date, delete surplusage, and correct the title of one of the enhancement offenses. Appellant objected and said he had no idea what they were talking about. He requested a copy of the indictment signed by the grand jury foreman and asked the court to get it to him that day so he would have it ten days before trial.

March 11, 2019

On the day of trial, outside the presence of the venire, the judge asked Appellant if he wanted to change out of jail clothes and have the shackles removed for trial.

Appellant responded that he wanted to waive his right to a jury and plead guilty, and he did not want to go to the jury for punishment. He complained that he had not received a copy of the indictment and that it had not been ten full days since the last pretrial hearing, but he still wished to plead guilty in open court. The court informed him of his right to appeal and his right to appointed counsel for an appeal:

THE COURT: Do you understand all of that?

THE DEFENDANT: Yes. What about having an attorney right now?

THE COURT: You've already made a choice not to have an attorney.

THE DEFENDANT: This is like way above my pay grade.

THE COURT: I tried to tell that [to] you twice. You didn't listen to me.

THE DEFENDANT: So I can't have an attorney now?

THE COURT: No, sir, not at this stage. But you can certainly appeal, based on the fact that you didn't have one, if you want to.

Appellant pled guilty to possession, pled "true" to the Utah rape enhancement paragraph, and "not true" to the Texas FTR enhancement paragraph. The State explained the paperwork to Appellant, and the trial court confirmed Appellant's understanding of the punishment range, his plea of guilty, and his rights to a jury trial and an appeal.

March 12, 2019

At the punishment hearing the following day, Appellant refused to be fingerprinted. He said he needed an attorney because he did not understand what the

fingerprints would be used for, he did not want to give evidence against himself, and he

wanted to know his rights.

> THE COURT:   Mr. Huggins, I gave you two attorneys.   You got rid of
> both of them.   You waited until I had 61 people – actually, I started with
> 71 people in this courtroom and decided you didn't – suddenly then you
> wanted to plead guilty because you wanted to jack the system around.
>
> THE DEFENDANT:   I don't want to jack the system around.
>
> THE COURT:   I went ahead and went along with it.   State waived its
> right to a jury trial.   You waived your right to a jury trial.   Guilt/innocence
> is over with; we're now going into punishment.
>
> THE DEFENDANT:   Nobody has told me what the fingerprints are for, so
> I need an attorney to advise me of my rights, if I have to do this or if I have
> to go through it.
>
> THE COURT:   You have to do it.

Appellant's fingerprints were taken, and the court heard his opening statement about the

unavailability of the FTR conviction for enhancement.

Throughout the punishment hearing Appellant claimed he did not know what he

was doing or what was going on, but he cross-examined the State's witnesses, lodged

various objections, and responded to the State's objections.   He again claimed he needed

an attorney to prove that the FTR conviction should not have been a third-degree felony,

but the trial court reminded Appellant that his second appointed counsel had made that

same argument, and the trial court had read the filings on that issue.   While cross-

examining the registrar for sex offenders and arguing that the second enhancement

paragraph was not true, Appellant said, "Again -- again, I have to extremely object that I do not have an attorney."

After the State rested, the trial court asked Appellant if he wished to testify or present any witnesses.

> THE COURT: If you'd like to testify, you can testify. Keep in mind that once you come here and testify, the entire -- your entire life history is an open book, but it doesn't matter to me.
>
> THE DEFENDANT: See, I'm telling you, Your Honor, I need an attorney because –
>
> THE COURT: Mr. Huggins, I gave you two lawyers.
>
> THE DEFENDANT: I understand that.
>
> THE COURT: You fired them both. You didn't want them. They didn't run your case the way you wanted it run.
>
> THE DEFENDANT: Now, I'm raising my hand in court and saying this is above my pay grade and my rights right now are not being protected.
>
> THE COURT: Well, and –
>
> THE DEFENDANT: And I'm asking for a lawyer because it -- it -- it clearly -- this is clearly a setup of some kind.
>
> THE COURT: Hold it. Hold it. You told me you wanted to proceed without a lawyer and now it's a setup?

Appellant continued to argue that the second enhancement paragraph was not true; he said Utah's ten-year sex offender registration requirement should have applied, and he should not have been subject to lifetime registration in Texas, so his FTR should not have been a third-degree felony.

THE COURT: I understand exactly what you think the law ought to be and exactly what your position of it is and I've got a feeling that's why two different lawyers aren't in here, but that's between and you them [sic]. I don't know. I don't ask them. None of my business. So what do you want to do at this time on this case, as far as whether you want to testify or not?

THE DEFENDANT: All I can say at this point, Your Honor, is I want an attorney.

THE COURT: Okay. Well, I'm going to get you an attorney when we get finished. But I gave you two, and I did everything I could. I told you over the years, all the way back to sometime in 2017, that you need to be represented by a lawyer, and you didn't like who I provided. I gave you lawyers that had over 60 years of trial experience, probably closer to 70, and you didn't like it so . . .

THE DEFENDANT: It wasn't I didn't like it. Texas law [Code of Criminal Procedure Article] 62.052 says I have to rely on my registration from Utah. It's a 10-year anniversary. It's a state jail felony.

THE COURT: All right. I understand. I'll take argument in just a minute. Is that where we're going at this point is to argument?

THE DEFENDANT: Yes. I guess at this time, on record, I'm not going to testify.

At the end of his summation, Appellant said,

There was no sense going to the trials because I was guilty. I'm not denying that. But during the penalty phase, I was just really stuck on my registration for 10 years. In 10 years, I'm done. It doesn't matter what state I'm in. It don't matter if I'm in the State of Texas or if I'm in the State of Florida or Utah.

The trial court found the enhancement paragraphs true and sentenced

Appellant to 18 years.

## IV. What Admonishments Were Required Here?

By the time Appellant asserted his right to self-representation the second time, he had represented himself briefly at the beginning of the case, he had been represented by two attorneys appointed in succession, his case was set for trial, and he had repeatedly challenged the legitimacy of the FTR enhancement paragraph. By that point, the record showed that he was literate, had represented himself before, and was aware of the dangers and disadvantages of self-representation in his enhanced case.

In May 2017:

- the trial court challenged Appellant's understanding about the availability of the Utah prior as an enhancement, advised him of the 2-to-20 range of punishment, said it was "a fairly serious matter" and advised against self-representation;

- Appellant agreed with that advice but said he had no money for "a real attorney" and expressed misgivings about accepting appointed counsel given his prior "shady dealings" with the "public defender's office" and the county;

- he admitted that he was "still trying to figure out" pretrial motions;

- he described his case as "extensive" with a punishment range of 2-20 and one that warranted his personal possession of discovery because "if an attorney was representing me, he would have the copy," and he had possessed discovery when he represented himself before.

In June 2017:

- Appellant asked for and was appointed a lawyer;

- he explained he was attending college, had "gotten clean," was trying to get his life in order;

- but he soon wrote to the court saying he had fired his attorney and wanted to represent himself again;

In January 2019:

- the trial judge said that he was not going to represent himself when he got in trouble;

- Appellant equated "a fool" to one who represents himself; and

- he said he "needed a legal understanding" because he had represented himself in the FTR case, suggesting that he knew that he lacked such an understanding.

In February 2019 before signing the waiver of counsel:

- Appellant acknowledged that he was at a disadvantage—filing motions would "take [him] a minute" because he wasn't an attorney; and

- he was not ready for trial.

The record thus shows that Appellant waived counsel with eyes open; he knew he was slower than a lawyer, that self-representation was foolish, and his case was "fairly serious" and "extensive"; he was having a hard time figuring out how to challenge the enhancement paragraph; when he represented himself before he had lacked "a legal understanding;" and he was not ready for his imminent trial. But even knowing all that, he chose to fire his second appointed attorney and represent himself. The trial court's failure to spell out the dangers and disadvantages of self-representation in greater detail was of no moment; Appellant already knew them. The court of appeals was correct that additional admonishments were unnecessary in this case, but it was Appellant's awareness of the dangers and disadvantages of self-representation, as reflected in the record—and not his late-stage guilty plea—that rendered them unnecessary.[1]

---

[1] Under other circumstances, additional admonishments may be required, and in an abundance of caution, trial courts may want to give them just in case. For example, a trial court could admonish a defendant who is considering self-representation that he would be required to adhere to evidentiary and procedural

## V. Is the right to withdraw a waiver of counsel under Article 1.051(h) absolute?

Article 1.051 allows a defendant to withdraw his waiver of counsel "at any time":

> (h) A defendant may withdraw a waiver of the right to counsel at any time but is not entitled to repeat a proceeding previously held or waived solely on the grounds of the subsequent appointment or retention of counsel. If the defendant withdraws a waiver, the trial court, in its discretion, may provide the appointed counsel 10 days to prepare.

Tex. Code Crim. Proc. art. 1.051(h). Appellant argues that the statute gave him an absolute right to withdraw his waiver of counsel just before voir dire began. He points out that the statute prohibits repetition of a proceeding already held or waived and grants discretion to the trial court in allowing newly appointed counsel more time to prepare and argues that courts may not engraft additional restrictions onto it. *McClintock v. State*, 541 S.W.3d 63, 66 (Tex. Crim. App. 2017). We disagree with Appellant's reading of the statute. Its plain language promotes the efficient administration of justice and prevents delay, but Appellant's interpretation would sometimes sacrifice these goals for the sake of indulging a defendant's vacillations.

The statute says, "at any time" and not "under any circumstances." The Legislature uses those phrases to mean what they say. *E.g.*, Tex. Code Crim. Proc. art. 29.02 ("A criminal action may be continued by consent of the parties thereto, in open court, at any time on a showing of good cause, but a continuance may be only for as long

---

rules. *Johnson v. State*, 760 S.W.2d 277, 279 (Tex. Crim. App. 1988). A trial court could tell a defendant that he would not later be heard to complain about the ineffectiveness of his self-representation. *Faretta*, 422 U.S. at 834 n.46, 835. Or a trial court could ask about a defendant's background and experience to determine whether his waiver of counsel was knowing and intelligent. *See, e.g.*, *Blankenship*, 673 S.W.2d at 583.

as is necessary"); *id.* art. 45.058(e) ("a child may not, under any circumstances be detained in a place of nonsecure custody for more than six hours"). If it had meant to allow a defendant to withdraw his waiver of counsel under any circumstances, the Legislature would have said so.

Reading "at any time" to mean "under any circumstances" would sometimes nullify the trial court's discretion to deny additional preparation time to new counsel because adequate preparation time is fundamental to the right to effective assistance. *See Powell v. Alabama*, 287 U.S. 45, 71 (1932) (holding that the duty to provide counsel is not fulfilled "by an assignment at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case."). In cases like this one, where Appellant sought to withdraw his waiver of counsel for a second time on the cusp of trial, the trial court would have had no real discretion to deny additional preparation time to a newly appointed attorney. *See id.* at 59.

A defendant may not use his right to counsel to manipulate the court. *Culverhouse v. State*, 755 S.W.2d 856, 861 (Tex. Crim. App. 1988). "[A]n accused's right to represent himself or select his own counsel cannot be manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice." *Webb v. State*, 533 S.W.2d 780, 784 (Tex. Crim. App. 1976). Appellant's reading would enable such manipulation.

The trial court was not required to unconditionally accommodate Appellant's vacillations between counseled and self-representation. *See, e.g., McKaskle v. Wiggins*,

465 U.S. 168, 183 (1984) ("A defendant does not have a constitutional right to choreograph special appearances by counsel."). Appellant asserted his right to self-representation, then asserted his right to counsel, then waived his right to counsel and again asserted his right to self-representation. The record reflects that, by the time Appellant waived counsel a second time, he did so knowingly and voluntarily. The record also supports the trial court's finding that when Appellant asked to withdraw his counsel waiver a second time, he was trying to "jack the system around." Under these circumstances, it was within the trial court's discretion to reject Appellant's request.

## VI. Conclusion

The admonishments required for self-representation depend on circumstances such as the complexity of the case, the stage of the proceedings, and the background of the defendant. Because the record shows Appellant was aware of the dangers and disadvantages of self-representation, and his waiver of counsel was knowing, voluntary, and intelligent, the warnings given were sufficient under the circumstances of this case.

The statutory right to withdraw a waiver of counsel under Code of Criminal Procedure Article 1.051(h) "at any time" does not mean under any circumstances. The trial court did not abuse its discretion in denying Appellant's second request to withdraw his waiver of counsel on the cusp of trial.

The judgment of the court of appeals is affirmed.

Delivered: September 6, 2023

Publish